Joseph A. McLAIN, et al.

.v.

David WILSON, etc., et al.

Civ. No. Y–83–2001.

United States District Court,
D. Maryland.

July 23, 1984.

William H. Kirkpatrick, II, Towson, Md., for plaintiffs.

George H. Cohen, Gary L. Sasso and Mady Gilson, Washington, D.C., Carl D. Frankel, Pittsburgh, Pa., J. Duke Avnet and John Price, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Alleging a breach of the duty of fair representation, members of a local of the United Steelworkers of America sued their local and the international union. The plaintiffs claim that union officials have treated their grievances—filed against their employer, Bethlehem Steel—in a perfunctory manner and have dismissed, withdrawn or settled their grievances arbitrarily. Having heard testimony and reviewed exhibits compiled during a three-day court trial, the Court concludes that the defendants, while demonstrating a degree of indifference to its members' grievances, have not violated the duty of fair representation, and finds for the defendants.

## BACKGROUND

An amended complaint was filed in this action August 2, 1983, which named 25 plaintiffs, all members of the United Steelworkers of America, and five defendants, sued as individuals and as representatives of the international and local unions. At a hearing February 17, 1984, several plaintiffs withdrew their complaints without prejudice, and several others were dismissed for failure to appear (*see* Court Order of February 27, 1984) leaving twelve plaintiffs. These plaintiffs engaged new counsel, and, on April 5, 1984, filed a "more definite statement" of their claims. The parties stipulated to the dismissal of two other plaintiffs.

A dispute emerged over the continued participation of one of the plaintiffs, Charles Wright. A motion to dismiss Wright was filed by the defendants May 31, 1984, on the ground that Wright did not attend his second scheduled deposition. Wright filed a response with the Court on June 11, 1984. The Court found his explanation unsatisfactory and, by letter dated June 14, 1984, requested further information. Wright filed a further affidavit June 25, 1984, and, although his submission was

untimely, the Court determined that the defendants would not be prejudiced by his inclusion in the case, and denied in open court the defendants' motion to dismiss him. In the pretrial order, the parties stipulated that all individual defendants would be dismissed, and that only a claim for breach of the duty of fair representation would be brought against the international and local unions.

A motion to bifurcate the trial on the issues of liability and damages was jointly filed by the parties and granted in open court when the trial commenced.

APPLICABLE LAW

The plaintiffs bring this claim under § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185, claiming that the defendant unions breached their duty of fair representation by processing the plaintiffs' grievances in an "arbitrary and perfunctory" fashion. The plaintiffs have alleged that on numerous occasions the union failed to pursue grievances, filed appeals in an untimely fashion, failed to notify the plaintiffs of the status of their grievances, and settled grievances "only in order to dispose of them."

■ In determining whether a union has violated its duty of fair representation, a court must balance the requirement that a union not act in an arbitrary, discriminatory, or perfunctory manner against the discretion accorded it in determining what action to take with regard to a member's grievance. The Supreme Court summarized the applicable law in *Hines v. Anchor Motor Freight*, 424 U.S. 554, 563–64, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976):

> Necessarily, "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents..." The union's broad authority in negotiating and administering effective agreements is "undoubted," ... but it is not without limits ... [T]he controlling statutes have long been interpreted as imposing upon the bargaining agent a responsibility equal in scope to its authority, "the responsibility and duty of fair representation." ... The union

as the statutory representative of the employees is "subject always to complete good faith and honesty of purpose in the exercise of its discretion ..." The duty of fair representation has served as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."

The court in *Hines* relied heavily on the earlier decision in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), which was also cited favorably in *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, ___, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983). In *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917, the Supreme Court stated:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.

The Fourth Circuit Court of Appeals, in *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 890 (1980), restated these principles:

> A union's duty to fairly represent is to "serve the interests of all members without hostility, discrimination, arbitrariness, or capriciousness toward any. Although a union may exercise discretion in representing employees, it must act with complete good faith and honesty." ... A breach of a union's statutory duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith."

■ When presented with a grievance, the union has a duty to investigate and determine the merits of the grievance. *Freeman v. O'Neal Steel*, 609 F.2d 1123, 1128 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). In order to make out a claim for inadequate

representation, a union member must show that the union acted in bad faith or arbitrarily. *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138, 142 (5th Cir.1979). Mere negligence in the handling of a complaint is not enough. *Buchanan v. N.L.R.B.,* 597 F.2d 388, 394 (4th Cir.1979).

As stated, plaintiffs claim that the union had failed to meet deadlines in filing appeals of adverse determinations, that it has not pursued meritorious grievances, and that it has failed to apprise grievants of the status of their complaints. These actions, say the plaintiffs, demonstrate a degree of arbitrariness and perfunctory treatment which violates the union's duty of fair representation. Each claim will be considered in turn.

## UNTIMELY APPEALS

The evidence presented at trial established that the plaintiffs, all employees of Bethlehem Steel at its Sparrows Point plant, located near Baltimore, are covered by a collective bargaining agreement entered into by Bethlehem and the United Steelworkers of America. This contract, Defendant's Exhibits 2 and 3, establishes a grievance procedure consisting of four "steps," followed by final and binding arbitration. Under the agreement, an employee alleging a violation of the contract must initiate a step 1 grievance within 30 days

> ... after the date on which the facts or events upon which the complaint is based shall have existed or reasonably should have become known to the Employee or Employees affected thereby ... Defendant's Exhibit 2, p. 57.

A step 1 grievance involves simply an oral discussion between the complaining employee (grievant) and the foreman, with or without the assistance of the "Assistant Grievance Committeeman" (AGC), a position held by the employee's shop steward.

If the foreman does not settle the grievance at that stage, the AGC may—in his discretion—appeal the grievance to the second stage (which involves a discussion between the AGC and the relevant superintendent), but such an appeal must be filed, on the appropriate form, within seven days (excluding weekends and holidays) of the AGC's receipt of the written form used for handling grievances.

After the second step, the AGC may, under the contract, file an appeal to the third step (a discussion between the local's Grievance Committee and the plant's Superintendent of Labor Relations) within 5 days of receipt of the record from the second step. To appeal to the fourth step, a meeting of two selected representatives from both the international union and the company, the appeal must be filed (under the contract) within 30 days of the step 3 meeting or within 20 days of receipt of the minutes of that meeting by a representative of the union, "whichever of those periods shall last expire." To appeal to an independent arbitrator, the union representative may file an appeal of the step 4 proceeding, again, within 30 days of the date of the meeting or within 20 days of receipt of a draft of the minutes of that meeting by a union representative.

At trial, the defendants acknowledged that there have been, in fact, delays in pursuing appeals of grievances which the union believed to have merit. The union presented undisputed testimony that these late filings were caused by delays in the production of minutes, and by a procedure under which grievances were held at a lower step "P.U.D." Representatives of both the union and the employer, Bernard Parrish and Charles G. Feist, explained that this abbreviation stands for "Pending Umpire's Decision," meaning that a prior grievance presenting identical or similar issues had already been presented to an arbitrator, and that the grievance being held would likely be resolved by the arbitrator's binding decision. Parrish and Feist also testified that a number of grievances were withheld last year when negotiations, described by Feist as "extensive and intense," were initiated between the company and the international in an effort to make the steel-making operation more efficient and competitive. They also testified that they could never remember the company

"calling time," or blocking appeal of a grievance on timeliness grounds.

■■■ Under these circumstances, the Court cannot find that the union has breached its duty of fair representation by failing to file timely appeals of grievances. The failure to move swiftly to consummate appeals for the reasons listed above, and for other reasons listed by Feist and Parrish, strikes this Court as being both appropriate and wise. Furthermore, another court has held that a failure to file timely appeals—*even when such a failure resulted in the company's "calling time"*—was not a violation of the duty of fair representation if the union had been reasonably relying on a "prevailing practice of freely granted extensions" of deadlines. *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211–12 (6th Cir.1981). Where, as here, the union knew that the company would not alter its practice of allowing—without exception—late appeals, the union did not breach its duty of fair representation.

## FAILURE TO PURSUE APPEALS

Under this section, the Court will treat the plaintiffs' claims that union officials dismissed appeals arbitrarily, failed to file appeals of adverse determinations and settled grievances simply "in order to dispose of them."

■■■ The law with regard to filing grievances and pursuing appeals allows the union considerable discretion, and a union member must show both that the grievance was meritorious and that the union recklessly, arbitrarily, or capriciously dropped the grievance.

"A union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." ... However, the fact that the grievance was meritorious does not establish a breach of the duty of fair representation or entitle the grievant to escape the bar of finality imposed by the collective bargaining agreement, for "[t]he grievance process cannot be expected to be error-free." ... There must be a separate showing of a union breach that "seriously under-mined the integrity of the arbitral process." ... Mere negligence of the union does not amount to such a breach. *Early v. Eastern Transfer*, 699 F.2d 552, 555 (1st Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983).

■ The ten plaintiffs complain of the union's failure to process some 27 grievances. Several of these grievances related to so-called "belt contract" work, which, according to testimony, related to the employer's recently adopted practice of contracting out splicing repairs when needed on certain types of conveyor belts (work which was once performed in-house). Undisputed testimony presented by the union established that these grievances were being held pending the arbitrator's decision on a related belt grievance, a decision (numbered 3139, *see* Defendant's Exhibit 42), which was issued in the middle of last month. Union officials testified, and there is no reason to doubt their testimony, that these grievances would be re-examined in light of the arbitrator's recent decision.

The plaintiffs' second major complaint related to the so-called "L" Blast Furnace at the Sparrows Point plant. Testimony showed that this huge furnace, which was developed to include modern manufacturing methods to make the industry more competitive, including hydraulic equipment and computerized controls, was set up by Bethlehem Steel as a separate unit at the Sparrows Point plant. The company restricted applicants for employment at the new furnace to those in the mechanical department—the division which employed the plaintiffs in this case—who had attained "craft" status, and who had exhibited expertise in hydraulic and water-cooling systems. (The grievants involved were "mechanical helpers" at the time applications were accepted for the furnace; applications were accepted only from "millwrights.")

■ Earlier arbitration decisions had determined that the company was authorized under the contract to set up "L" furnace as a separate employment unit (*see* arbitration

decision number 2782, Defendant's Exhibit 16). These grievances related to the plaintiffs' layoff while "Junior" millwrights working at L Furnace remained employed. Parrish, the union official handling the grievances, after reviewing the arbitrator's decision on similar grievances, determined that the grievances filed by the plaintiffs had no merit. His testimony was echoed by Feist, who had handled the grievances for Bethlehem. The two also testified that the grievance was settled for $4,000, which was divided among 68 employees who had filed similar grievances. The union was certainly entitled to settle the grievances for a small monetary sum—or drop them altogether—where the grievances were repetitive of grievances which had already been denied by an arbitrator. *Singer v. Flying Tiger Line Inc.,* 652 F.2d 1349, 1355 (9th Cir.1981). The plaintiffs attempted to attack the union's testimony that the grievances had no merit by questioning why the company would have been willing to pay anything to settle unmeritorious grievances. However, having reviewed the arbitrator's earlier decisions and the substance of the grievances filed by the plaintiffs, the Court is satisfied that the grievances presented similar issues, and the union was entitled to drop them.

■ The Court need not discuss in extensive detail the remaining grievances which were settled, held pending, or dropped by the union, because the Court is satisfied that, in each case, the union either correctly determined that the grievances lacked merit and should not be pursued, or made a good-faith determination that the grievances should not be pursued. Another complaint dealt with the lack of training available for a millwright as he sought to acquire expertise in water-cooling and hydraulics systems—*see* Michael Cerreta's grievance (Defendant's Exhibit 28a–e). The plaintiffs complained that Parrish attempted to dismiss this complaint at the first arbitration hearing on the matter. Testimony showed that Parrish actually attempted to settle the dispute for a monetary amount, correctly predicting that an arbitrator would deny the grievance. Even though Parrish was authorized, by the contract, to settle or dispose of the grievance at his discretion, at Ceretta's insistence, the matter was not settled, and proceeded to arbitration, and the claim was denied (*see* arbitration decision number 3075, Defendant's Exhibit 33). Certainly, where the union determines that a matter does not have merit and attempts to settle on that basis—and where the union's decision is ultimately borne out—the union has not breached its duty of fair representation.

## FAILURE TO INFORM OF STATUS

The one claim presented by the plaintiffs which troubled the Court was the plaintiffs' contention that the union "utterly" failed to keep grievants informed of the status of their grievances. The evidence established that grievances are filed on forms, examples of which were entered into evidence, and that copies of these forms, with notations as to the progress of each grievance, are maintained at steps 1 and 2 by the assistant grievance committeeman (AGC) handling the complaint, and then by the local and international unions as the grievance proceeded through steps 3 and 4 and arbitration. Grievants are neither informed of the status of their grievances nor given copies of the minutes of meetings at steps 3 and 4 nor invited to attend the various meetings between union and management representatives, or to attend arbitration hearings. Each of the plaintiffs testified in turn of the difficulty they encountered in determining what had happened to their grievances. Indeed, union officials admitted that they do not notify the grievants even when grievances are withdrawn or settled. Rather, they maintained, the AGC, or shop steward, is informed when the grievances are settled or disposed of, and the AGC is expected to inform the grievant when he inquires. Where a monetary settlement is reached, grievants find out about the settlement only because an extra sum is added to their paychecks with a grievance number—corresponding to no document they have in their possession—listed beside the figure. This

result is particularly confusing since many of the plaintiffs have more than one grievance pending simultaneously.

The defendants testified as to their understandable frustration in tracking grievances and keeping members posted on their grievances. They noted that the unit employing the plaintiffs, the 413 mechanical division, has filed 25 times as many grievances, with only one quarter the employees of another unit at the plant. Parrish testified that he has handled thousands of grievance proceedings and hundreds of arbitrations in his career with the local and then international union. However, there must be some efficient method of keeping grievants informed of their grievances, particularly when the grievances are settled or dropped. The Court explored several possibilities with union officials on the stand, and every suggestion was met with complaints of expense or administrative difficulty. Nonetheless, it would seem that the union, entrusted with the authority to handle grievances as it sees fit with the courts playing only a very limited supervisory role, owes the grievants some notification of how grievances are being handled and their status. The current method, as stated by Ivory Dennis, a local union official, requires members to inquire of their shop stewards, but testimony also established that shop stewards may be unaware of the progress of a grievance at the higher levels of the grievance procedure. Surely, the union can find some method, perhaps posting a list at the union hall, to notify grievants of the status and disposition of their complaints.

Nevertheless, the Court cannot find this failure to notify, when coupled with no other proven violation of the duty of fair representation, to be actionable. As the court stated in *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976):

> The Union may have acted negligently or exercised poor judgment in failing to keep Whitten informed of the status of

his grievance, but this is not sufficient to support a claim of unfair representation. Consequently, the Court will find for the defendants, but cautions the defendants that a procedure should be established so that grievants may more easily learn of the status of their complaints.