**DELIA ANDERSON, Appellant/Plaintiff**

**v.**

**AMERICAN FEDERATION OF TEACHERS d/b/a AFT LOCAL 1826,
Appellee/Defendant**

S. Ct. Civil No. 2016-0047

Supreme Court of the Virgin Islands

August 3, 2017

MARTIAL A. WEBSTER, SR., ESQ., Law Office of Martial A. Webster, Sr., Frederiksted, USVI, *Attorney for Appellant.*

AMOS W. CARTY, JR., ESQ., Law Offices of Richard P. Bourne-Vanneck, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 3, 2017)

CABRET, *Associate Justice.* Delia Anderson appeals the Superior Court's August 10, 2016 judgment, which granted the motion for summary judgment filed by American Federation of Teachers d/b/a AFT Local 1826 ("Local 1826") and entered summary judgment against Anderson. Because Anderson failed to establish the existence of a genuine

issue of material fact that would preclude summary judgment, we affirm the Superior Court's August 10, 2016 judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 1996, Anderson — a teacher at John H. Woodson Junior High School on St. Croix since 1980 — received a letter from the superintendent of schools for the district of St. Croix informing her that the Virgin Islands Department of Education was terminating her employment. Anderson is a dues-paying member of Local 1826. After receiving the Department of Education's letter, Anderson "called [her] union representative" at the school, who allegedly told Anderson to speak with Local 1826's president, Cecil Benjamin. Anderson complied, and met with Benjamin. During this meeting, Anderson claims that Benjamin told her that she "should have never been terminated" and that "he would take care of it." Anderson "sat with Mr. Benjamin" and "explain[ed] to [him] everything that occurred," and according to Anderson, she and Benjamin "started filling out papers [for] the grievance process" then existing under the collective bargaining agreement between Local 1826 and the Department of Education. Around the time she initially spoke with Benjamin, Anderson also spoke with Maria Heywood, vice president of Local 1826, who "moved things a little bit further" for Anderson, and who discussed Anderson's case with her when Benjamin was off island. By letter dated March 11, 1996, Local 1826 informed the Department of Education that it was appealing Anderson's termination.

At some point between March 4, 1996, and March 14, 1996, a meeting was scheduled to discuss Anderson's termination. Benjamin was slated to represent Anderson at this meeting, but by letter dated March 14, 1996, Anderson requested that Heywood also be present at this meeting. At her deposition, Anderson testified that this meeting never occurred, and in a May 7, 1996 letter to Benjamin, attributed this nonoccurrence to the Government's alleged "fail[ure] to respond to the request for an informal meeting." Anderson also used her May 7, 1996 letter to voice her dissatisfaction with Benjamin's alleged "lack of professionalism . . . . lack of responsibility, direction[,] and interest," and demanded that Heywood assume responsibility for her case.

A July 23, 1996 letter from Anderson to Benjamin illustrates that Benjamin did not abdicate his role in Anderson's case to Heywood. In that letter, Anderson acknowledged that she had spoken with Benjamin earlier

that day concerning her case. According to Anderson's letter, Benjamin had "indicated that [he] would be taking [Anderson's grievance] to the Public Employee Relations Board." In her letter, Anderson expressed reluctance to do so because she believed "that every effort must be made to resolve this matter prior to taking [that] time-consuming step." After posing seven questions to Benjamin concerning the status of her case, Anderson concluded her letter by acknowledging that Benjamin had told her to come to his office on Friday, July 26, 1996, to collect written information that Benjamin promised to prepare for her.

Apparently dissatisfied by the pace with which Local 1826 handled her grievance, Anderson filed a "Charge of Unfair Labor Practice" with the Public Employees Relations Board against Local 1826 and the Department of Education on October 7, 1996. The record contains a separate charge for Local 1826 and the Department of Education, but each document bears the same case number: "ULPC-97-03." In the document pertaining to Local 1826, Anderson alleged that the union "failed to provide adequate representation," that Benjamin "has neglected to respond to telephone calls and correspondence seeking information about the status of the termination grievance with the Department of Education," and that "[p]romises made to pursue the matter in other areas such as PERB have been broken." In the document relating to the Department of Education, Anderson alleged that the Department terminated her without due process. By stipulation dated November 16, 1997, the Department of Education agreed to reinstate Anderson immediately with payment of back wages. In exchange, Anderson agreed to withdraw "the Unfair Labor Practice Charge, ULPC-97-03."[1]

On April 3, 1998, following her reinstatement as a teacher and the withdrawal of ULPC-97-03, Anderson filed a three-count complaint against Local 1826 in the Superior Court. In her complaint, Anderson claimed that the Superior Court had "jurisdiction" over Local 1826 under the Virgin Islands Public Employee Labor Relations Act ("PELRA"), V.I. CODE ANN. tit. 24, §§ 361-383. Under count one of her complaint,

---

[1] Anderson named Local 1826 as a respondent in ULPC-97-03, and she admits to this fact in her deposition. But even though the stipulation recites that Anderson agreed to "withdraw the Unfair Labor Practice Charge, ULPC-97-03," the stipulation does not state that Anderson withdrew that charge only with respect to the Department of Education, or both the Department of Education and Local 1826. In her deposition, Anderson maintained that the stipulation only pertained to her claims against the Department of Education.

Anderson alleged that Local 1826 breached its fiduciary duty under the collective bargaining agreement "through its bad faith inattention to [her] grievance." Under count two, Anderson alleged that Local 1826 "was negligent in carrying out its contractual duties [under the collective bargaining agreement because] it failed to file the grievance in a timely manner." Finally, under count three, Anderson alleged that Local 1826 "was negligent in its representation of [her] grievance" because it failed "to exercise its option of requesting a waiver of the time limits for the processing of the grievance" and "to file [her] grievance in a timely manner . . . causing said grievance to be dismissed."

On July 20, 2007, Local 1826 moved for summary judgment, arguing that the statute of limitations barred Anderson's claims. *Anderson v. Am. Fed'n of Teachers*, Civil No. SX-98-CV-359, 2014 V.I. LEXIS 23, at *10 (V.I. Super. Ct. Apr. 3, 2014) (unpublished). In its order denying Local 1826's motion, the Superior Court construed the three causes of action pleaded in Anderson's complaint as a single claim for breach of the duty of fair representation against Local 1826. *See id.* The Superior Court did not recharacterize Anderson's complaint *sua sponte*. Rather, it did so in response to the representations made by both Local 1826 and Anderson in their briefing on Local 1826's summary judgment motion. *See id.* (observing that Local 1826 "contends that Anderson's claim[s are] essentially an action for breach of duty of fair representation," and that Anderson "also characterizes her suit as a '[c]ase against [Local 1826] for breach of duty of fair representation and damages' ").

On July 8, 2015, Local 1826 moved for summary judgment again, this time alleging that it was entitled to judgment as a matter of law on Anderson's duty-of-fair-representation claim. In support of its position, Local 1826 relied on the deposition of Tyrone Molyneaux — Benjamin's successor as president of Local 1826 — to establish that it had appealed Anderson's termination, and the deposition of Anderson to establish that Anderson and Benjamin had communicated repeatedly concerning the processing of her grievance. Local 1826 also attached copies of its March 11, 1996 letter to the Department of Education, and Anderson's May 7, 1996 and July 23, 1996 letters to Benjamin as evidence in support of its motion. Anderson attempted to rebut Local 1826's second summary judgment motion by alleging that the union "failed to provide her with representation and failed to file a timely grievance on her behalf." She supported this statement with citations to her deposition testimony, in

which she allegedly testified that "no meeting ever took place between [Local 1862] and [the Department of Education] as required," and that she "was [not] made aware of whether the grievance had actually been filed and [was] being processe[d] despite her numerous requests." Anderson also alleged that she "was being harassed by representatives from [Local 1826] in the form of threatening letters and calls," but she did not substantiate this allegation with a citation to deposition testimony or other evidence. Anderson attached excerpts from her deposition transcript to her response, along with a copy of her March 14, 1996 and July 23, 1996 letters to Benjamin. She also included copies of the unfair labor practice charges filed in ULPC-97-03, and various medical records. Lastly, Anderson included an unsigned affidavit in which she alleged, without further detail, that Local 1826 "failed to provide [her] with representation and failed to file a timely grievance on [her] behalf," and that she "was being harassed by representatives from [Local 1826] in the form of threatening letters and calls." Anderson later filed an executed copy of this affidavit on October 20, 2015.

Continuing to treat Anderson's complaint as a single claim for a breach of the duty of fair representation, the Superior Court observed that such a claim could only lie if Local 1826's handling of Anderson's grievance was arbitrary, discriminatory, or was done in bad faith. After reviewing the evidence submitted by Local 1826, the Superior Court concluded that the union carried its burden of demonstrating the absence of any genuine issue of material fact with respect to Anderson's putative duty-of-fair-representation claim. The Superior Court then reviewed Anderson's response and the attached evidence, and concluded that she failed to establish a genuine issue with respect to whether Local 1826's handling of her grievance was arbitrary, discriminatory, or in bad faith. Accordingly, by judgment entered on August 10, 2016, the Superior Court granted the summary judgment motion filed by Local 1826 on July 8, 2015 and dismissed Anderson's case. Anderson filed a timely notice of appeal on September 9, 2016. See V.I. R. APP. P. 5(a).

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). A judgment granting summary judgment and dismissing a case is final within the meaning of section 32(a). *See, e.g., United*

783

*Corp. v. Hamed,* 64 V.I. 297, 302 (V.I. 2016). Since the Superior Court's August 10, 2016 judgment dismissed Anderson's case, it is final and we have jurisdiction.

## III. DISCUSSION

■ "We exercise plenary review over the Superior Court's decision on a grant of summary judgment." *Alexander v. Alexander,* 65 V.I. 372, 377 (V.I. 2016) (citing *Machado v. Yacht Haven U.S.V.I., LLC,* 61 V.I. 373, 379-80 (V.I. 2014)). Before reviewing the Superior Court's ruling, it is first useful to discuss the duty of fair representation upon which Anderson's claim rests.[2]

### A. A Union's Duty of Fair Representation

■ In its summary judgment motion — and again on appeal — Local 1826 asserts that its duty of fair representation arises pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169. Under the NLRA, labor organizations that negotiate with employers over employee grievances owe a duty of fair representation to the employees

---

[2] Neither party challenged the propriety of the Superior Court's reclassification of Anderson's three-count complaint as a claim for breach of the duty of fair representation, either before the Superior Court or on appeal. However, where a plaintiff's claims against a union are subsumed under the union's duty of fair representation, courts have not hesitated to construe the complaint's written allegations to match its substance. *See, e.g., Scott v. Machinists Auto. Trades Dist. Lodge No. 190,* 827 F.2d 589, 591-94 (9th Cir.1987) (breach of implied covenant of good faith and fair dealing, intentional interference with contractual relations, intentional infliction of emotional distress, and defamation claims all subsumed under the duty of fair representation that arises by operation of the NLRA); *Tocarchick v. UAW Region 1,* Case No. 15-CV-11329, 2015 U.S. Dist. LEXIS 110706, at *6 (E.D. Mich. July 30, 2015) (unpublished) (construing claims of fraudulent misrepresentation, gross negligence, and depraved indifference as a claim for breach of the duty of fair representation); *Marcus v. Dolan,* Civ. No. CIV.A.08-CV-2181 (WJM), 2008 U.S. Dist. LEXIS 61397, at *6 (D.N.J. Aug. 12, 2008) (unpublished) (construing claims of discriminatory representation, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing as a claim for breach of the duty of fair representation); *Callahan v. New Mexico Fed'n of Teachers-TVI,* 2006-NMSC-010, 139 N.M. 201, 131 P.3d 51, 60 (2006) (construing claims for negligence, breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty as a claim for breach of the duty of fair representation). We undertook a similar approach in *Joseph v. Bureau of Corr.,* 54 V.I. 644 (V.I. 2011), where we construed a *pro se* plaintiff's breach of contract claim as a claim for breach of the duty of fair representation. *Id.* at 651. Accordingly, we perceive no error in the Superior Court's reclassification of Anderson's complaint, especially where the parties themselves urged that the Superior Court adopt such a position.

that they represent. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983); *Vaca v. Sipes*, 386 U.S. 171, 177-78, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967). Although not stated in the plain text of the NLRA, this duty exists by implication because the NLRA permits a single labor organization to represent the interests of all employees in a single unit. *See DelCostello*, 462 U.S. at 164 n.14 (explaining that, "[i]n such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct' " (quoting *Vaca*, 386 U.S. at 177)). But this duty only applies with respect to a labor organization's interactions with "employers," a term defined by the NLRA to exclude "any State or political subdivision thereof." 29 U.S.C. § 152(2). Consequently, when a labor organization advocates on behalf of an employee of a state government, or one employed by a political subdivision of such a government, the NLRA does not govern the organization's actions. *See Gomez v. Gov't of the V.I.*, 882 F.2d 733, 736 (3d Cir. 1989) (observing that "the NLRA . . . only applies to private sector employers and their employees" (citing *Crilly v. Se. Pa. Transp. Auth.*, 529 F.2d 1355, 1357 (3d Cir. 1976))); *Am. Fed'n of State Cty. & Mun. Emps. v. City of Lebanon*, 360 Ore. 809, 388 P.3d 1028, 1032 & n.4 (2017) (same). Assuming that the Virgin Islands Department of Education constitutes a "State or political subdivision thereof" as that phrase is used in the NLRA, Local 1826's premise that its duty of fair representation arises by operation of the NLRA is inaccurate.[3]

■ This does not mean, however, that Local 1826 owes no duty to Anderson. In *Gomez* the United States Court of Appeals for the Third Circuit interpreted PELRA as imposing a duty of fair representation on labor organizations that negotiate on behalf of employees of the Virgin

---

[3] It is unclear whether the territorial possessions of the United States, along with their governments and related instrumentalities, constitute "State[s] or political subdivision[s] thereof" under the NLRA. *But cf. San Manuel Indian Bingo & Casino v. N.L.R.B.*, 475 F.3d 1306, 1316-17, 374 U.S. App. D.C. 435 (D.C. Cir. 2007) (concluding that the Indian tribes did not fall under the "state or political subdivision" exception under the NLRA). No court appears to have addressed this issue. But we need not resolve this question because local law imposes the same duty of fair representation on unions that represent employees of the Government of the Virgin Islands. *See Joseph v. Bureau of Corr.*, 54 V.I. 644, 655 (V.I. 2011).

Islands government and its agencies. *Gomez*, 882 F.2d at 737-38. We adopted the Third Circuit's interpretation of PELRA in *Joseph v. Bureau of Corrections*, 54 V.I. 644 (V.I. 2011), and defined the scope of a labor organization's duty of fair representation under PELRA in the same manner as federal courts define that duty under analogous labor law. *See Joseph*, 54 V.I. at 655 (explaining under the NLRA that a plaintiff establishes a claim for a breach of the duty of fair representation against a union by pleading "sufficient facts to permit us to plausibly infer that the [u]nion acted in an arbitrary or discriminatory manner or in bad faith" (citing *Vaca*, 386 U.S. at 190)); *Seafarers Int'l Union of N. Am. v. Thomas*, 42 F. Supp. 2d 547, 554, 40 V.I. 218 (D.V.I. App. Div. 1999) ("To recover against a union for breach of the union's duty to fairly represent the employee, the employee must prove that the union's conduct was arbitrary, discriminatory, or in bad faith." (citing *Vaca*, 386 U.S. at 190)). Therefore Local 1826 owes a duty of fair representation to Anderson, and breached this duty if it processed Anderson's grievance arbitrarily, discriminatorily, or in bad faith. *Joseph*, 54 V.I. at 655.

■ Under PELRA, " '[a] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational.' " *Joseph*, 54 V.I. at 655 (quoting *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282-83 (2d Cir. 2005)). This "extremely deferential standard" prohibits a court from substituting its judgment for that of the union, "even if, with the benefit of hindsight, it appears that the union could have made a better call." *See Ooley v. Schwitzer Div. Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992). And although we have not yet opined on the "discriminatory" or "bad faith" prongs of the duty of fair representation that arises under PELRA, case law interpreting the same duty under analogous federal law is instructive. *See, e.g., Joseph*, 54 V.I. at 655 (looking to case law interpreting the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, to define the "arbitrary" prong of PELRA's duty of fair representation). Under this case law, prohibited discriminatory conduct includes discrimination based on "impermissible or immutable classifications such as race or other constitutionally protected categories, or . . . prejudice or animus," *Simo v. Union of Needletrades, Indus. & Textile Emps. Sw. Dist. Council*, 322 F.3d 602, 618 (9th Cir. 2003), as well as discrimination based on union membership. *Bernard v. Air Line Pilots Ass'n, Int'l*,

873 F.2d 213, 216 (9th Cir. 1989). This case law also instructs that a union "acts in bad faith when it acts with an improper intent, purpose, or motive," and that bad faith "encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted).

■ A claim against a union for breach of its duty of fair representation "imposes a heavy burden on employees" that challenge union conduct. *Morales-Vallellanes v. Potter*, 339 F.3d 9, 16 (1st Cir. 2003). "No one incident or piece of evidence may be sufficient to demonstrate that a union's conduct was 'arbitrary, discriminatory or in bad faith.' " *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 618 (9th Cir. 1981). Generally, the question of whether a delay in processing a grievance violates the union's duty depends on the facts of each case. *Compare, e.g., Lee v. Cytec Indus., Inc.*, 460 F.3d 673, 677-78 (5th Cir. 2006) (summary judgment for union on employee's duty-of-fair-representation claim was appropriate where plaintiffs did not rebut the union's evidence that, although the union delayed in processing their grievance, such delays were common to the grievance process), *with Beavers v. United Paperworkers Int'l Union, Local 1741*, 72 F.3d 97, 101 (8th Cir. 1995) (genuine issue of material fact precluded summary judgment on employee's duty-of-fair-representation claim where the evidence demonstrated that the union did nothing for nearly two months after receiving the employee's grievance and then delayed for an additional four months after voting to press the grievance, despite having no past practice of delaying), *and Walker v. Consol. Freightways, Inc.*, 930 F.2d 376, 382 (4th Cir. 1991) (stating that a "[m]alicious or egregious delay in pursuing plaintiffs' rights" may violate a union's duty of fair representation). But a union's failure to communicate with a grievant regarding the status of their case, alone, does not constitute a breach of the union's duty of fair representation. *See, e.g., Pinkney v. Progressive Home Health Servs.*, 367 Fed. Appx. 210, 212-13 (2d Cir. 2010) (allegations that union failed to return an employee's phone calls and harbored an unspecified bias against her were insufficient to show that the union breached its duty of fair representation); *Aparicio v. Potter*, 136 Fed. Appx. 14, 15 (9th Cir. 2005) (allegations that a union representative ignored an employee's phone calls and caused delays in the proceedings, alone, did not save employee's duty-of-fair-representation claim from summary judgment in the union's favor); *Whitten v. Anchor Motor*

*Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975) (failure to keep employee informed of the status of his grievance may have been evidence of the union's negligence of exercise of poor judgment, but was insufficient to support a jury verdict that the union breached its duty of fair representation).[4]

## B. The Superior Court's Summary Judgment Ruling

With a clearer understanding of the duty at issue in this case, we may now evaluate the Superior Court's decision to enter summary judgment in Local 1826's favor. In conducting such a review, we apply the same test that the Superior Court should have applied, viewing all inferences from the evidence in the light most favorable to the nonmoving party and taking that party's allegations as true if properly supported. *Machado*, 61 V.I. at 379. The movant bears the initial burden of showing that there is no genuine issue of material fact. *United Corp. v. Hamed*, 64 V.I. 297, 309 (V.I. 2016) (citations omitted); *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (citation omitted). The movant may carry this burden by pointing out that there is an absence of evidence to support the nonmoving party's case. *Williams*, 50 V.I. at 194 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the movant meets this burden, the nonmoving party must introduce some evidence showing a genuine issue for trial. *Alexander*, 65 V.I. at 378 (citing *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527-28 (V.I. 2013)).

---

[4] *See also Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 404-05 (S.D.N.Y. 2000) ("It is beyond cavil, however, that '[t]he failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation.' " (quoting *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 197 (E.D.N.Y. 1998))); *Tracy v. Local 255 of Int'l Union of Elec., AFL-CIO*, 783 F. Supp. 1527, 1531 (D. Mass. 1992) ("[F]ailure of the Union to provide information on the status of a grievance is not indicative of arbitrary behavior in the processing of the grievance itself."); *McLain v. Wilson*, 591 F. Supp. 474, 480 (D. Md. 1984) ("[T]he Court cannot find this failure to notify, when coupled with no other proven violation of the duty of fair representation, to be actionable."); *Besedich v. Missile & Space Div. of LTV Aerospace Corp.*, 433 F. Supp. 954, 959 (E.D. Mich. 1977) (concluding that a union "may have acted negligently or exercised poor judgment in failing to keep [an employee] informed of the status of his grievance, but this [fact] is not sufficient to support a claim of unfair representation"); *but see Goncalves v. Labor Relations Comm'n*, 43 Mass. App. Ct. 289, 682 N.E.2d 914, 920 (1997) (union violated its duty of fair representation where, in addition to failing to inform the employee of the status of his grievance, the union also failed to follow its own policies for processing grievances and failed to respond to requests for information submitted by the employee's attorney).

788

To carry this burden, "the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla," in support of its position. *Perez*, 59 V.I. at 527-28 (citation omitted). In accordance with this framework, we first consider Local 1826's motion before evaluating Anderson's response in opposition.

## 1. Local 1826's Motion

■ ■ Under the well-established summary judgment framework, the Superior Court correctly determined that Local 1826 discharged its summary judgment burden when it introduced evidence that it promptly addressed Anderson's grievance in a nondiscriminatory manner. By introducing its March 11, 1996 letter to the Department of Education, Local 1826 introduced evidence that it had appealed Anderson's termination to the Department of Education seven days after Anderson received her termination letter, and excerpts from Anderson's deposition transcript included with Local 1826's motion constitute evidence that Benjamin began working with Anderson as soon as the Department of Education terminated her. *See Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) (concluding that no reasonable juror could conclude that a union violated its duty of fair representation where the union "appointed a representative for plaintiff and filed a grievance on her behalf . . . within days of her suspension"). Further, by introducing Anderson's July 23, 1996 letter to Benjamin, Local 1826 produced evidence that it met with the Department of Education and continued to process Anderson's grievance — at least until Anderson informed Benjamin that she would rather not appeal her grievance to the PERB until the union made "every effort . . . to resolve [her grievance] prior to [appealing to the PERB]." *See Marshall v. Ormet Corp.*, 736 F. Supp. 1462, 1471 (S.D. Ohio 1990) (eight- to ten-month delay in grievance proceedings was not arbitrary, discriminatory, or in bad faith where the grievant would not cooperate with the union); *see also Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 30 (4th Cir. 1991) ("A union is its members' representative, not their puppet, and its duty of fair representation is not a servitude to their individual whims."). Since Local 1826 introduced some evidence that its handling of Anderson's grievance was not arbitrary, discriminatory, or was done in bad faith, the burden shifted to Anderson to demonstrate a genuine issue of material fact to the contrary. *See Alexander*, 65 V.I. at 378 ("Only if the movant meets [its]

burden must the non-moving party introduce some evidence showing a genuine issue for trial." (citing *Perez*, 59 V.I. at 527-28)).

## 2. Anderson's Response

■ Anderson failed to carry her summary judgment burden because she did not introduce more than a scintilla of evidence to rebut the evidence produced by Local 1826. In her response to Local 1826's motion, Anderson did not claim that Local 1826's conduct was discriminatory, and she does not proffer such an argument on appeal. *See* V.I. R. APP. P. 22(m) ("Issues that were . . . not briefed . . . are deemed waived for purposes of appeal[.]"). Although she attached numerous pieces of evidence to her response in opposition, Anderson only cited to her deposition testimony and an affidavit created at some point after that testimony to demonstrate the existence of a genuine issue of material fact.[5] (*See* J.A. 77 (citing to pages 32[6] through 46 of Anderson's deposition).) Since neither the Superior Court nor this Court is expected to cull the record in order to assist a party in discharging their summary-judgment burden, we focus on whether Anderson's deposition transcript and affidavit evidences a genuine issue of material fact. *See Marsh-Monsanto v. Clarenbach*, 66 V.I. 366, 378 (V.I. 2017) ("[T]his Court will not 'cull the record' to find material that the appellant had a duty to bring to the Court's attention." (quoting *Madir v. Daniel*, 53 V.I. 623, 635 (V.I. 2010))). Anderson advances four arguments ostensibly premised on the contents of her deposition. Since Anderson does not purport to rely on her affidavit on appeal, we address her four arguments before turning to the contents of her affidavit.

First, citing to pages 32 to 46 of her deposition transcript as evidence, Anderson argues that "no meeting ever took place between [Local 1826] and [the Department of Education]." Page 34 of her deposition contains Anderson's testimony that "the first step [of the grievance procedure]

---

[5] Because neither party included the cover page for Anderson's deposition, the record is silent with respect to exactly when Local 1826 deposed Anderson. But the deposition reporter dated her certificate July 2, 2007. In contrast, Anderson submitted an unsigned affidavit with her response to the Local 1826's summary judgment motion on October 8, 2015, and later filed a signed copy of the same affidavit on October 20, 2015.

[6] Anderson only attached pages 33 to 94 of her deposition transcript to her response in opposition. Despite her claim, she did not submit page 32 of her deposition transcript.

would have been an informal meeting. We never had that." Even if an informal meeting were never held, this fact evidences no failure on Local 1826's part. The collective bargaining agreement governing Anderson's grievance, attached as Exhibit 5 to Anderson's response, indicates that the first step of the grievance procedure requires *the grievant* to discuss her complaint "with the principal or appropriate administrator on an informal basis." As the grievant, Anderson possessed the responsibility to take the initial step of the grievance procedure, but the record contains no indication that she did so. The grievance procedure does not obligate union involvement until the second step, under which the grievant "and the Union representative shall meet in an effort to resolve the grievance" if "the matter is not resolved on an informal basis." Moreover, if the collective bargaining agreement obligated Local 1826 — and not Anderson — to initiate an informal meeting, Local 1826's March 11, 1996 letter to the Department of Education constitutes evidence that the union took this step when it requested that the district superintendent "set a date and time for such hearing as soon as possible." Local 1826 copied Anderson on this letter, and Anderson's March 14, 1996 letter to Heywood reveals that Anderson was aware of "the upcoming meeting which will be held to discuss [her] termination case." Anderson even acknowledges this fact on page 39 of her deposition transcript. Nor was this the only time that Local 1826 attempted to meet with the Department of Education. Anderson's July 23, 1996 letter references a "recently scheduled termination hearing" between Local 1826 and the Department of Education that Anderson "was unable to attend." Like the initial meeting requested in Local 1826's March 11, 1996 letter, Anderson acknowledged Local 1826's subsequent effort to meet with the Department of Education in her deposition. And while this evidence does not rebut Anderson's testimony that the informal meeting never occurred, Anderson claimed that "the government has failed to respond to the request for an informal meeting" in her May 7, 1996 letter to Benjamin. Therefore, the fact that the informal meeting contemplated under the first step of the grievance procedure may never have been held is at best attributable to the Department of Education's failure to respond to Local 1826, not to any fault of the union itself, and does not create a genuine issue of material fact concerning whether Local 1826's actions were arbitrary, discriminatory, or were done in bad faith. *See Guerra v. Commc'ns Workers*, No. 95-20067, 1996 U.S. App. LEXIS 43768, at *9-11 (5th Cir. 1996) (per curiam)

(affirming summary judgment for a union where a delay in arbitrating a grievance was not attributable to the union, but rather to the arbitrator's schedule, the pregnancy complications of the employer's attorney, and the employee's premature action against the employer).

■ Second, ostensibly according to pages 32 to 46 of her deposition transcript, Anderson argues that she was never informed whether her grievance was being filed or processed. Anderson's characterization of her testimony is contradicted by her actual testimony, in which she stated that she sat down with Benjamin as soon as she received her termination letter, explained everything that occurred, and "started the process" of appealing her termination. To the extent that this testimony is ambiguous with respect to whether Benjamin actually pursued Anderson's grievance, the unrebutted evidence proffered by Local 1826 dispels any uncertainty. Benjamin copied Anderson on his March 11, 1996 letter to the Department of Education requesting a meeting, and Anderson's March 14, 1996, May 7, 1996, and July 23, 1996 letters to Benjamin all evidence an ongoing dialogue between Benjamin and Anderson with respect to Local 1826's handling of her grievance. In the concluding paragraph of her July 23, 1996 letter, Anderson even acknowledges that Benjamin was still producing written information for her by that date. Rather than disclaim their content, Anderson acknowledges in her deposition that her letters say what they purport to say: Anderson knew that Local 1826 was processing her grievance. And even if Anderson's letters to Benjamin have no evidentiary value whatsoever, a claim for breach of a union's duty of fair representation cannot be sustained solely on a union's alleged failure to keep a grievant informed of the status of his or her grievance, as noted above. *See, e.g., Pinkney*, 367 Fed. Appx. at 212-13; *Aparicio*, 136 Fed. Appx. at 15; *Whitten*, 521 F.2d at 1341; *Beckman*, 79 F. Supp. 2d at 404-05. Accordingly, Anderson's second argument does not evince a genuine issue of material fact concerning Local 1826's duty of fair representation.

Third — again ostensibly according to pages 32 to 46 of her deposition transcript — Anderson argues that she "could never meet with Mr. Benjamin and was literally ignored." But like her second argument, Anderson's third argument is unsupported by her actual deposition testimony, in which she explained that, several days after receiving her termination letter, she "sat with Mr. Benjamin, . . . explain[ed] everything that occurred . . . . [and] started the process" of appealing her termination.

792

She testified that she was familiar with her March 14, 1996 letter to Heywood, in which she requested that Heywood, along with Benjamin, represent her at an upcoming meeting intended to discuss her termination. And when asked about her July 23, 1996 letter to Benjamin, she acknowledged that she had spoken on the phone with Benjamin, that Benjamin indicated to her that he wanted to appeal her case to the PERB, and that Benjamin had promised to prepare certain written information for her. Contrary to Anderson's third argument, her deposition testimony illustrates that she not only met with Benjamin, but also communicated with him periodically concerning the status of her grievance. Like her second argument, Anderson's third argument is little more than a claim that Local 1826 did not keep her sufficiently informed of the status of her grievance. By itself, such an allegation cannot, as a matter of law, sustain a claim for breach of the duty of fair representation. Like her first two arguments, Anderson's third argument does not evidence a genuine issue of material fact.

The same thing is true with respect to Anderson's fourth argument, that Local 1826 "acted in bad faith by refusing to answer her calls, respond to her complaints[,] and pursue her grievance while having [her] believe it was going to be working in her interest." Although this argument is not specifically supported by a citation to pertinent materials in the joint appendix, see V.I. R. App. P. 22(a)(5) ("The argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."), it suffers from the same infirmities as her previous three arguments. Accordingly, it does not create a genuine issue of material fact concerning whether Local 1826's handling of Anderson's grievance was arbitrary, discriminatory, or in bad faith.

 Whether Anderson's affidavit demonstrates the existence of such a genuine issue of material fact requires a different analysis that ultimately yields the same result. Like conclusory allegations in a complaint or an answer, "conclusory allegations [in] an affidavit" are insufficient to defeat a summary judgment motion. *Maduro v. Am. Airlines, Inc.*, S. Ct. Civ. No. 2007-0029, 2008 V.I. Supreme LEXIS 24, at *13 (V.I. Feb. 28, 2008) (unpublished) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)); *see, e.g., Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) ("Conclusory statements in an affidavit do not provide facts that will

793

counter summary judgment evidence[.]" (citation omitted)); *Colwart v. Encompass Indem. Co.*, 961 So. 2d 527, 530 (La. Ct. App. 2007) ("It is well settled that affidavits with conclusory allegations of fact which are devoid of specific facts will not be considered sufficient to defeat a summary judgment." (citations omitted)).[7] In responding to a summary judgment motion, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Maduro*, 2008 V.I. Supreme LEXIS 24, at *14 (quoting *Celotex Corp.*, 477 U.S. at 324) (internal quotation marks omitted); *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 420 (V.I. 2009) (citing *Celotex Corp.*, 477 U.S. at 324), *overruled on other grounds by Machado*, 61 V.I. at 385-86, *as stated in Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 413 n.5 (V.I. 2016); *accord Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014) (in opposing summary judgment, the nonmoving party "must directly contradict the moving party's evidence").

A conclusory affidavit lacks factual specificity. *See, e.g., Stagliano v. Cincinnati Ins. Co.*, 633 Fed. Appx. 217, 219-20 (5th Cir. 2015) (concluding that an expert's affidavit was cursory because it recited the expert's credentials and opinion without "any factual support or explanation of the expert's basis for concluding that observed damage occurred as a result of a particular hail storm"); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) (rejecting "conclusory allegations, not backed up by statements of fact" in an affidavit submitted

---

[7] *See also Smith v. Milwaukee Hous. Assistance Corp.*, No. 96-3637, 1997 U.S. App. LEXIS 12441, at *4 (7th Cir. May 22, 1997) (unpublished) ("[C]onclusory statements in [plaintiff's] affidavit do not create an issue of fact." (quoting *Sample v. Aldi Inc.*, 61 F.3d 544, 549 (7th Cir. 1995)) (alterations in original)); *Austin v. Trotter's Corp.*, 815 S.W.2d 951, 953 (Mo. Ct. App. 1991) ("An affidavit which fails to aver specific facts and relies only upon mere doubt and speculation fails to raise any issue of material fact. . . . Conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings." (citations omitted)); *Abrass v. Associated Grocers Wholesale Co*, No. 81-078, 1981 Ohio App. LEXIS 11379, at *6 (Ohio Ct. App. Aug. 14, 1981) (unpublished) ("Conclusory allegations, however, in an affidavit opposing a motion for summary judgment are insufficient as against well-averred facts in the affidavit supporting the motion." (quoting 32A Ohio Jurisprudence 2d, *Judgments*, §§ 901-902, at 440-42) (internal quotation marks omitted)); *Hughes-Johnson Co. v. Dakota Midland Hosp.*, 86 S.D. 361, 195 N.W.2d 519, 521 (1972) (concluding that summary judgment against the defendant was proper because the defendant's "conclusory allegations did not set forth any specific facts," and thus could not rebut plaintiff's "specific and detailed" evidence concerning "the dates and amounts of all payments made by defendant to plaintiff on [a] construction contract").

to support a claim for breach of duty of fair representation and affirming summary judgment for the union on that claim); *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982) (same); *Marsh v. Hog Slat, Inc.*, 79 F. Supp. 2d 1068, 1074 (N.D. Iowa 2000) (collecting cases); *Rigby v. Coughlin*, 730 F. Supp. 1196, 1199 (N.D.N.Y. 1990) (rejecting as conclusory an affidavit alleging "that employees were treated differently than other union members" because such an allegation lacked "factual detail," and therefore could not support a claim for breach of duty of fair representation); *Mellon v. Benker*, 186 A.D.2d 1020, 588 N.Y.S.2d 482, 483 (1992) (rejecting as conclusory a plaintiff's affidavit that provided no factual support for her claim that her union acted arbitrarily, discriminatorily, or in bad faith). Anderson's affidavit exemplifies this trait. In her affidavit, she swears that Local 1826 "failed to provide [her] with representation and failed to file a timely grievance on [her] behalf," and that she "was being harassed by representatives from [Local 1826] in the form of threatening letters and calls." These representations stand naked, bereft of any factual support concerning *how* Local 1826 failed to provide Anderson with representation, *why* the grievance filed by Local 1826 was untimely, *when* Local 1826 "harassed" her, or *what* form that alleged harassment took. Further, the two statements in Anderson's affidavit do not even attempt to respond to the evidence introduced by Local 1826, which shows that: the union appealed Anderson's termination to the Department of Education by letter dated March 11, 1996; Anderson and Benjamin communicated in person immediately after the Department of Education terminated her in order to prepare her grievance; Anderson and Benjamin continued corresponding by letter and telephone until at least July 23, 1996; and, by at least July 23, 1996, Benjamin was still preparing documents for Anderson. Because the allegations in Anderson's affidavit are devoid of factual support and utterly fail to respond to the evidence introduced by Local 1826, they cannot create a genuine issue of material fact with respect to the exercise of Local 1826's duty of fair representation.[8]

---

[8] We also note that Anderson's affidavit directly contradicts her deposition testimony that she and Benjamin "started the process" of appealing her termination, that she and Benjamin continued to communicate by letter and phone through at least July 23, 1996 concerning her grievance, and that Local 1826 set up meetings between itself and the Department of Education — even if the latter did not attend the first meeting. Some jurisdictions preclude a party from

## IV. CONCLUSION

■ ■ A claim against a union for breach of its duty of fair representation imposes a heavy burden on employees, and while arbitrary, discriminatory, or bad faith conduct will breach this duty, a mere failure to keep a grievant informed of the status of their case does not surpass such a threshold. The unrebutted evidence adduced by the Local 1826's summary judgment motion and Anderson's response, demonstrates that Anderson's suit is nothing more than a claim that Local 1826 did not correspond with her to her liking. While delinquent communications may constitute evidence that a union negligently handled an employee's grievance, such evidence cannot sustain a claim that the union breached its duty of fair representation.[9] Since Anderson's claim is legally unsound, the Superior Court properly concluded that Anderson did not demonstrate any genuine issue of material fact that Local 1826's handling of her grievance was arbitrary, discriminatory, or in bad faith, and we affirm the Superior Court's August 10, 2016 judgment.

---

creating genuine issues of material fact by introducing an affidavit that directly contradicts prior deposition testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991) (summarizing authorities from some federal circuit courts of appeals). This "sham affidavit" rule prevents a party from manufacturing a bogus credibility dispute with himself to defeat summary judgment because such a practice greatly diminishes the utility of summary judgment as a procedure for screening out sham issues of fact. *Nelson v. City of Davis*, 571 F.3d 924, 927-28 (9th Cir. 2009). Other jurisdictions reject application of this rule because it "improperly shifts credibility determinations from the trier of fact to the trial court on summary judgment." *Marcantonio v. Moen*, 406 Md. 395, 959 A.2d 764, 771 (2008) (citing *Pittman v. Atl. Realty Co.*, 359 Md. 513, 754 A.2d 1030, 1041 (2000)). Since Anderson argued, both in opposition to summary judgment and on appeal, that "triable issues of material fact that require[ ] the weighing of credibility of the parties and witnesses," this case would seem to present an opportunity to address whether this jurisdiction should adopt the sham affidavit rule.

Yet neither party invoked the sham affidavit rule, either before the Superior Court or this Court. Generally, "[o]nly issues and arguments fairly presented to the Superior Court may be presented for review on appeal," V.I. R. APP. P. 4(h), and "[i]ssues that were . . . not raised or objected to before the Superior Court . . . or [are] unsupported by argument and citation to legal authority[ ] are deemed waived for purposes of appeal[.]" V.I. R. APP. P. 22(m). And considering the conclusion that Anderson's affidavit is too conclusory to establish a genuine issue of material fact, we need not address whether the sham affidavit rule operates in this jurisdiction.

[9] Indeed, one court has cautioned that "union representatives are not lawyers, and a case claiming breach of the duty of fair representation is not the same thing as a legal malpractice case or a postconviction petition claiming ineffective assistance of counsel." *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) (citing *Stevens v. Highway, City & Air Freight Drivers, Dockmen, & Helpers Local Union No. 600, etc.*, 794 F.2d 376, 377 (8th Cir. 1986)).