**FILED**
May 12, 2022 02:19 PM
ST-2017-CV-00337
TAMARA CHARLES
CLERK OF THE COURT



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| SHARLINE L. ROGERS, | ) CASE NO. ST-2017-CV-00337 |
| | ) |
| Plaintiff, | ) |
| | ) ACTION FOR DECLARATORY |
| vs. | ) JUDGMENT |
| | ) |
| GOVERNMENT EMPLOYEES'[1] RETIREMENT | ) |
| SYSTEM OF THE UNITED STATES VIRGIN | ) |
| ISLANDS and the GOVERNMENT EMPLOYEES' | ) |
| EMPLOYEES' RETIREMENT SYSTEM OF THE | ) |
| UNITED STATES VIRGIN ISLANDS BOARD OF | ) |
| TRUSTEES, | ) |
| | ) |
| | ) |
| Defendants. | ) |

Cite as: 2022 VI Super 52U

**MEMORANDUM OPINION**

¶1    **THIS MATTER** is before the Court on:

1. Plaintiff's Notice of Motion For Summary Judgment ("Motion for Summary Judgment") and Memorandum In Support Of Motion For Summary Judgment ("Memorandum"), filed on December 12, 2018;

2. Defendant Government Employees Retirement System Board Of Trustees (hereinafter "The Board") Opposition To Plaintiff's Motion For Summary Judgment and Memorandum Of Law In Support Of The Board's Opposition To Plaintiff's Motion For Summary Judgment, filed on January 25, 2019;

3. Defendant's [Government Employees Retirement System of the Virgin Islands] Opposition To Plaintiff's Motion For Summary, filed on January 25, 2019;

4. Plaintiff's Reply To The Government Employees' [sic] Retirement System Board Of Trusttees' [sic] Opposition To Motion For Summary Judgment, filed on February 7, 2019; and

5. Plaintiff's Reply To The Government Employees' [sic] Retirement System's

---

[1] V.I. Code Ann. tit. 3, § 701 states: "[t]he system created under this chapter shall have the powers and privileges of a corporation, subject, as provided herein, to the control of the Board of Trustees thereof, and shall be known and designated as the 'Government Employees Retirement System of the Virgin Islands'". In other words, there is no apostrophe (') after Employees.

Opposition To Motion For Summary Judgment, filed on February 7, 2019.

¶2     The Court will grant Plaintiff's Motion For Summary Judgment and order: (1) the Defendants to return the $16,139.00 paid by Plaintiff to GERS for her time at the District Court of the Virgin Islands; (2) the Defendants to provide an accounting of the amount of interest that accrued during the period Defendants retained and had the use of Plaintiff's funds; and (3) the Defendants to pay to Plaintiff the amount of interest that actually accrued on the erroneously collected payment of $16,139.00.

## I.     INTRODUCTION

¶3     On July 27, 2017, Plaintiff Sharline L. Rogers ("Rogers") filed a Complaint against Defendants Government Employees' Retirement System of the United States Virgin Islands ("GERS"), the Government Employees' Retirement System of the United States Virgin Islands ("the Board"), Defendant Austin L. Nibbs, in his capacity as Administrator/CEO of GERS, and Defendant Wilbur K. Callender, in his capacity as Chairperson of the Board.[2] On August 3, 2017, Rogers filed an Amended Complaint, removing ing Mr. Nibbs and Mr. Callender as Defendants.[3]

¶4     Rogers states that she was employed by the District Court of the Virgin Islands from September 1990 through August 1993 and, in 2004, she inquired with GERS whether she might be able to receive credited service towards her GERS retirement fund for the time she was employed at the District Court of the Virgin Islands.[4] Rogers was informed by letter dated February 27, 2006 that she could make contributions for her non-credited service up to $16,139.00, which Rogers elected to do through payroll deductions and a payment in May 2007 and July 2007 until the full $16,139.00 was paid off.[5] Rogers was then informed by letter dated August 23, 2016, that a GERS employee had made an error in allowing Rogers to be credited for her District Court employment. and Rogers subsequently requested a refund of the $16,139.00, along with a 9% per annum interest rate pursuant to V.I. CODE ANN. tit. 3 § 951(a).[6]

¶5     On September 28, 2016, the GERS' Administrator indicated GERS would return the money at 2% interest, given GERS' authority to set the interest rate a member receives when he or she withdraws from service pursuant to 3 V.I.C. § 713(a).[7] Rogers informed the GERS' Administrator in an October 7, 2016 letter that she was not withdrawing from service, so the 2% interest rate was not applicable.[8] Rogers argues that because even GERS admits that "[t]here is no provision in title 3 Virgin Islands Code, chapter 27 that sets the rate of interest that is due on

---

[2] Pl.'s Compl. 1.
[3] Pl.'s Am. Compl. 1.
[4] Pl.'s Mem. 2.
[5] Pl.'s Mem. 2.
[6] Pl.'s Mem. 3.
[7] Pl.'s Mem. 3.
[8] Pl.'s Mem. 3.

monies contributed to the [GERS] for non-credited [service] on GERS' erroneous[] advice that it was permissible," the provision in 11 V.I.C. § 951(a) controls.[9] That provision provides that the rate of interest shall be nine percent (9%) per annum on all monies which become due.[10]

¶6     Rogers also argues that she is due prejudgment interest, both under 11 V.I.C. §951(a) and as an equitable remedy under a theory of unjust enrichment.[11] Rogers calculates that at her 9% interest rate she is due a total of $32,150.28, which is $16,217.21 plus interest of $15,993.21.[12] The $16,217.21 amount was calculated by adding a 2007 payment total of $14,400.90 to the 2006 payment total of $1,816.31.[13]

¶7     GERS admits that it informed Rogers through a February 27, 2006 letter that total contributions due to the system for non-credited time at the District Court, WAPA, and the Virgin Islands Legislature was $16,139.00.[14] GERS disputes that this total only reflects Rogers' non-credited service for her employment at the District Court.[15] GERS states in subsequent correspondence it informed Rogers that "several errors were made by the staff of GERS Member Services in calculating her non-credited time" and "that she was never eligible to receive credited time for her service with the U.S. District Court."[16] GERS further states that in response to Rogers' September 9, 2016 letter requesting a refund, and "[p]ursuant to Resolution No. 09-2009," GERS determined that it would refund Rogers the sum of $16,139.00 at a two-percent (2%) interest rate.[17] GERS states that on May 10, 2017, GERS sent Rogers a check for $23,404.44, which was rejected by Rogers on June 6, 2017.[18]

¶8     GERS states that its employees were improperly applying a 1966 law that allowed federal employees who moved to the territorial government to get credit towards their retirement fund for their federal employment.[19] The law, which became 3 V.I.C. § 704(h), had a sunset provision that voided the law after three (3) years, although it was not removed from the code until Act no. 6794 in 2005, after Rogers' first inquiry but before her second inquiry.[20] GERS states that the first issue of material fact is Rogers' misinterpretation of the February 27, 2006 letter, which calculated the missing contributions for her "entire case and not just the U.S. District Court time."[21] GERS states that only $10,947.06 should be refunded, reflecting her District Court time, as the total $16,139.00

---

[9] Pl.'s Mem. 4.
[10] 11 V.I.C. §951(a)
[11] Pl.'s Mem. 9-17.
[12] Pl.'s Mem. 19.
[13] Pl.'s Mem. n. 17.
[14] Def.'s Opp'n 4.
[15] Def.'s Opp'n 2.
[16] Def.'s Opp'n 4.
[17] Def.'s Opp'n 4-6.
[18] Def.'s Opp'n 6.
[19] Def.'s Opp'n 7.
[20] Def.'s Opp'n 8.
[21] Def.'s Opp'n 8.

amount was calculated also looking at her time at "WAPA and the V.I. Legislature."[22]

¶9     GERS further argues that the only allowable interest payments are when a "non-vested member leaves the system" and that there are no other provisions in the code relating to refunds which shows "the Legislature's clear intent that interest should not be given for other instances of refunds such as an over payment."[23] GERS states that there is "no statutory authority for interest on an overpayment of contribution" and 11 V.I.C. § 951 does not apply because none of its requirements has been met, since "there is a discrepancy as to when the contract between the government and the plaintiff actual [sic] begins."[24]

¶10    GERS cites to *Kendall v. The Superior Court of the V.I.*.[25] where the Court ruled that money does not become due under the retirement contract until a person has applied for an annuity—therefore, no money has become due, and 11 V.I.C. § 951 is not applicable.[26] Further, since the duty created by the contract is to provide payment of retirement annuities, and the time of performance has not yet arrived, there is no breach of the contract.[27] GERS argues that Rogers cannot succeed on an unjust enrichment claim because a contract exists and unjust enrichment is an equitable remedy and, thus, it would be inappropriate to apply it because a legal remedy exists.[28] GERS also argues that a nine percent (9%) interest rate is "extremely exorbitant" and that "GERS is responsible for securing the financial future of its members and their beneficiaries" so "[a]ny amount awarded will reduce the ability of GERS to fund annuities."[29] Lastly, GERS argues that the "ERISA" statute is not applicable to GERS and, therefore, cases cited by Rogers that feature ERISA have no bearing on the case.[30]

¶11    The Board argues that, while there is no other mention of refund in the GERS enabling statute, "the spirit of § 713(a) was meant to address refunds generally" and as the only section that explicitly addresses refunds in chapter 27, the regular interest set by the Board pursuant to that section is the interest rate to be used when returning refunds.[31] The Board also argues that prejudgment interest should not be granted "because exceptional and unusual circumstances exist" making the award inequitable.[32] These circumstances include the mistake by the GERS member who informed Rogers she could receive non-credited service for work at the District Court, GERS is currently experiencing financial strain and such an award may adversely affect members,

---

[22] Def.'s Opp'n 8.
[23] Def.'s Opp'n 9-10.
[24] Def.'s Opp'n 10-11.
[25] Civil No. 2010-109, 2013 U.S. Dist. LEXIS 27320 (D.V.I. 2013).
[26] Def.'s Opp'n 12-13.
[27] Def.'s Opp'n 13.
[28] Def.'s Opp'n 14.
[29] Def.'s Opp'n 15.
[30] Def.'s Opp'n 16.
[31] Def. Board's Opp'n 5.
[32] Def. Board's Opp'n 6.

including Rogers, and the 2% interest is just and equitable as it is the current rate set by GERS.[33]

¶12    The Board also argues that Rogers and GERS entered into a contract upon the payment of $16,139.00, whereby Rogers received service credit towards retirement, the time for performance was not ascertained, and the contract was silent as to damages.[34] The Board states that because the law is silent on damages, the Court should apply the Restatement (Second) of Contracts § 354(2), which states that "such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due."[35]

¶13    The Board further argues that if the Court is persuaded by Rogers' unjust enrichment claim, the Court should follow the example outlined in *Addie v. Kajer*[36] where, when performance on a contract is discharged because of impracticability, frustration of performance, non-occurrence of a condition or disclaimer, the party receives back whatever benefit the party has already conferred.[37] The Board states that Rogers has conferred $16,139.00 to GERS and thus an adequate remedy under unjust enrichment is the return of this money to Rogers.[38]

¶14    In her Reply, Rogers says that GERS "acknowledges that in 2004 when [she] inquired about receiving credited service for her District Court of the Virgin Islands employment, it was the GERS's practice to grant credited service for employment with the federal government" and that "it appears that this practice continued until 2015."[39] Second, Rogers states that "there is absolutely no indication in Ms. Holder's letter that the $16,139 [Rogers] paid included missing contributions from the District Court of the Virgin Islands, the Virgin Islands Water and Power Authority and the Legislate [sic] of the Virgin Islands" as the letter sets forth her "entire employment history, even projecting [Rogers'] employment with the Legislature of the Virgin Islands to a future date" and that "[a]t a subsequent meeting with Mrs. Holder, which is evidenced in the February 27, 2005 correspondence from Mrs. Holder, Mrs. Holder advised [Rogers] that [Rogers'] would have to pay $16,139 to the GERS to receive credited service for [Rogers'] employment at the District Court."[40]

¶15    Further, Rogers asserts that the Authorization she executed for non-credited service specifies that she "was authorizing the GERS to 'start payroll deductions for payment of [her] non-credited service time . . . to pay off [her] prior service balance of $16,139.00.'"[41] Rogers also states that "there is no provision in the Virgin Islands Code that allows for interest on contributions made erroneously to the GERS" because "there will not be a provision [providing] for interest for a

---

[33] Def. Board's Opp'n 6.
[34] Def. Board's Opp'n 7.
[35] RESTATEMENT (SECOND) OF CONTRACTS § 354(2) (1981); Def. Board's Opp'n 7.
[36] 737 F.3d 854 (2013).
[37] Def. Board's Opp'n 9.
[38] Def. Board's Opp'n 10.
[39] Pl.'s Reply 1.
[40] Pl.'s Reply 2.
[41] Pl.'s Reply 2-3.

particular circumstance if the Legislature of the Virgin Islands did not anticipate such an occurrence."[42]

¶16    Rogers agrees that "GERS has not breached its duty to [Rogers] to provide [Rogers] with a retirement annuity, a disability annuity, or any other benefit" but, rather, Rogers "contends and the GERS Board of Trustees has acknowledged that the GERS and [Rogers] entered into a contract whereby [Rogers] would pay the GERS $16,139 and [Rogers] would receive credited service for the District Court employment."[43] Rogers states therefore that pre-judgment interest is awardable to her as well as the nine percent (9%) rate of interest on money due when there is a breach of a contract with no agreed upon contractual rate.[44] Lastly, Rogers states that she does "not contend that the Employee Retirement Income Security Act cases . . . are controlling" but, rather, Rogers states she cites to them for "illustrative purposes."[45]

## II.    LEGAL STANDARD

### A.  Summary Judgment

¶17    Summary Judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[46]

¶18    Or, as the Virgin Islands Supreme Court stated in *Antilles School, Inc. v. Lembach*,[47] summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party."[48]

¶19    Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to material

---

[42] Pl.'s Reply 3.
[43] Pl.'s Reply 3-4.
[44] Pl.'s Reply 4.
[45] Pl.'s Reply 4-5.
[46] V.I. Civ. P. 56(a).
[47] 64 V.I. 400 (V.I. 2016).
[48] *Id.* at 409.

fact[.]"[49] The nonmoving party must show in its response to a motion for summary judgment that there are "specific facts showing a genuine issue for trial."[50] In addition, "[t]he non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough[.]"[51] For a nonmoving party to show some genuine issue of material fact for trial, "'the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla,' in support of its position."[52] Further, "[i]f the non-movant offers evidence that is 'merely colorable' or not 'significantly probative,' summary judgment may be granted."[53] Finally, the "Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party."[54]

## B. Government Employees' Retirement System; Refunds; Interest

¶20    On June 24, 1959, the Virgin Islands Legislature established "a retirement and benefit system for officials and employees of the Government of the United States Virgin Islands and for their dependents and beneficiaries, for the payment of retirement annuities, disability annuities, and other benefits . . . to said officials and employees, and to their dependents and beneficiaries[.]"[55] "The responsibility for the proper operation of the System and for making effective the provisions of this chapter is vested in the Board of Trustees" which is composed of seven (7) members.[56] Title 3, § 713(a) of the Virgin Islands Code establishes how a government employee may receive a refund from GERS, and it reads in its entirety:

> Upon withdrawal from service, any member who does not have ten years of credited service and is not then eligible for a service retirement annuity shall be entitled to receive a refund of the accumulated contributions, plus regular interest, including contributions made by the member to any superseded retirement System. Any member withdrawing from service who does not receive a refund and later returns to service shall receive credit for the amount of credited service in force at the time of his withdrawal from service. Any member receiving a refund shall thereby waive and relinquish all accrued rights in the System including all accrued credited service. The System may, in its discretion, withhold payment of a refund for a period not to exceed one year after receipt

---

[49] *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[50] *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (quoting FED. R. CIV. P. 56(e)).

[51] *Id.* at 229 (quoting *Williams*, 50 V.I. at 194-95).

[52] *Anderson v. American Fed'n of Teachers*, 67 V.I. 777, 789 (V.I. 2017) (quoting *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527-28 (V.I. 2012)).

[53] *Pemberton Sales & Serv. v. Banco Popular de P.R.*, 877 F. Supp. 961, 965 (D.V.I. 1994).

[54] *Williams*, 50 V.I. at 195 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[55] 3 V.I.C. 701(a).

[56] 3 V.I.C. 715(a).

of an application from a member. If no specific request to the contrary is made by a member within 30 days from the date of his separation from the service, the System may, in its discretion, refund the accumulated contributions of any member who has less than 3 years of credited service; notwithstanding that such member may not have applied for a refund.[57]

¶21    "Regular interest" is defined in 3 V.I.C. § 702(k) as "interest at such rate as shall be determined by the Board from the experience of the system which shall be not less than two percent nor more than four percent per annum."[58] In the case of *In the Matter of Gallivan v. Gov't Emples. Retirement Sys.*,[59] the Board refunded Magistrate Judge Gallivan "for GERS' overcharges over the period from January 2015 through the pay period ending May 27, 2017, and for interest on the overcharges[.]"[60] Like in the instant case, Judge Gallivan had argued that she was entitled to 9% interest under 11 V.I.C. § 951, while GERS in that case argued it did not have to pay pre-judgment interest because 5 V.I.C. § 426(b) prevents the Government of the Virgin Islands from having to pay pre-judgment interest.[61]

¶22    The Board made a similar argument *In the Matter of Gallivan* to the one the Board makes here, arguing that there is no provision that provides for the rate of interest on refunds for overpayment, but § 762(a) is close enough and the interest to be provided should be the same as outlined there.[62] However, *In the Matter of Gallivan*, the Court ruled that "the Board erred in determining that the refund rate described in 3 V.I.C. § 762(a) applies to a refund for a member's overpayments in contributions to GERS due to GERS' overcharges."[63] The Court ruled that Judge Gallivan was, instead, entitled to receive a refund of her overpayments and accrued interest on a restitution theory, measured by "defendant's unjust gain, not by the plaintiff's loss."[64] The Court ruled that "[o]n a theory of restitution, Judge Gallivan is entitled to a refund for contribution overpayments and GERS' interest gains—but not losses—on those overpayments."[65]

## III.    ANALYSIS

¶23    The parties do not dispute that Rogers paid $16,139.00 to GERS for prior non-credited service at the District Court and that this payment was based off an erroneous interpretation of the Virgin Islands Code. While GERS disputes in its Opposition that this amount solely reflects Rogers' work at the District Court, both parties agree that Rogers paid this amount, requested it be

---

[57] 3 V.I.C. 713(a).

[58] 3 V.I.C. 702(k).

[59] 2019 V.I. Super 62.

[60] *Id.* at ¶ 52.

[61] *Id.* at ¶ 53. The Court did not address the issue of pre-judgment interest beyond stating this argument from GERS, so the Court will address it below as applied to this case.

[62] *Id.* at ¶¶ 54-57.

[63] *Id.* at ¶ 58.

[64] *Id.* at ¶ 59.

[65] *Id.* at ¶ 62.

returned, and GERS attempted to return it only to have Rogers return the money, as the issue of the correct interest rate was not resolved.

¶24    As there are no material facts in dispute, this case is ripe for summary judgment. The Court will grant Rogers' Motion For Summary Judgment insofar as she requests GERS be made to disgorge funds which rightfully belong to her. The Court will not assess a 9% interest rate or prejudgment interest but, rather, it will follow the holding from *In the Matter of Gallivan* and order the funds be returned to Rogers along with any monies that were gained by GERS from a positive investment rate of return.

### A. Rogers is not entitled to 9% interest or prejudgment interest on her erroneous non-credited service payment

¶25    The Court is not persuaded that 11 V.I.C. § 951 is applicable to the instant case. While it is accurate that the Legislature only included in the statute an interest rate to be applied to refunds provided by GERS after retirement, it is also true that the Legislature omitted from the statute any process for GERS to provide any refund before retirement. Thus, if the Legislature was indicating through omission its desire to only apply the "regular interest" rate to retirement refunds and not any others, it can equally be said the Legislature was indicating through omission its desire for GERS to not provide *any* refunds until retirement. Further, it would seem counter to the Legislature's desire to limit the interest rate assessed on GERS payments to between 2% and 4% if all an employee had to do to receive a much higher 9% interest rate is request a refund of their payments any time before or right up to retirement.

¶26    Further, there has been no breach or violation of GERS' contractual commitment to Rogers. GERS' duties and obligations to Rogers, and the prerequisites Rogers must meet to qualify for them, are plainly laid out in 3 V.I.C. § 713(a), paramount among them is the requirement that the employee has withdrawn from service. Rogers has not yet withdrawn from service. Nor is the Court persuaded that the Authorization Of Payroll Deduction For Non-Credited Service Time form created a new, separate contract between GERS and Rogers. The form merely directs GERS how to do something it is already required to do under its preexisting agreement with Rogers, deposit funds from her paycheck into a retirement fund. Further, the deductions are explicitly for "non-credited service time" and, as GERS makes clear, federal employment does not count as "service time" that can be credited. Even if the Authorization form established a new contract, as both parties were mistaken as to a key material fact of the contract, namely that District Court employment counts as "service time," there is a mutual mistake which would render the supposed agreement voidable.

¶27    Lastly, Title 5, § 426(b) of the Virgin Islands Code states that "[n]otwithstanding the provisions of title 11, section 951(a)(1) and title 33, section 3408(a), of this code, or any other law, pre-judgment interest shall not be charged against the Government of the Virgin Islands on any

judgment or decree for the payment of money by the Government."[66] GERS is an "independent and separate agency of the Government of the United States Virgin Islands."[67] As stated above, § 951(a)(1) is not applicable in this situation, and since Rogers points to no other law or provision granting an exception to § 426(b), pre-judgment interest may not be assessed against GERS in this case.

### B. Rogers is entitled to a refund of the $16,139.00, as well as any interest actually accrued on those contributions.

¶28    Rogers, however, is entitled to the return of the $16,139.00 paid to GERS, as well as any interest that actually accrued, under a theory of restitution. No party disputes that Rogers is owed the money and, indeed, there have been prior attempts to return this money to Rogers before litigation commenced. What is disputed is how much interest is owed to Rogers. While GERS argues Rogers is not entitled to an unjust enrichment claim because there is a contract, the contract did not anticipate a GERS employee erroneously telling a contributor that she may receive credited-service time for employment with the federal government. GERS has no claim to this money under the agreement between Rogers and GERS, as GERS may only consider service time with the territorial, and not federal government. Further, GERS has retained these funds for over a decade during which inflation has lessened its principal value, GERS has had an opportunity to make a profit from these funds, and GERS has denied Rogers an opportunity to a profit from these funds. Thus, equity demands that Rogers not simply receive the principal amount since it has been held by GERS for so long.

¶29    Moreover, given the Court's ruling and analysis *In the matter of Gallivan*, which dealt largely with an analogous situation, under a theory of restitution, the interest owed to Rogers is whatever the actual interest was that accrued upon the overpaid funds during the period in which GERS retained Rogers' funds. Thus, if investments made by GERS with $10,000 had resulted in a gain of $500, Rogers would be entitled to the full $10,500. However, as stated *In the matter of Gallivan*, this amount is only to include interest gains, not losses.[68] Therefore, GERS will be ordered to provide the Court with a current and up-to-date accounting of how much interest actually accrued on the $16,139.00. The period of calculation shall be between July 10, 2007, when GERS fully received this amount, and the date of entry of judgment consistent with this Memorandum Opinion.[69]

### IV.    CONCLUSION

¶30    Plaintiff Sharline L. Rogers filed suit on July 27, 2017, against GERS and its Board of

---

[66] 5 V.I.C. § 426(b).

[67] 3 V.I.C. 715(a).

[68] 2019 VI Super 62, ¶ 63 ("On a theory of restitution, Gallivan is entitled to a refund for contribution overpayments and GERS' interest gains—but not losses—on those overpayments.").

[69] Pl.'s Mem. 2.

Trustees seeking a refund on payments erroneously made into the GERS retirement trust fund on the belief that she would be credited service time for her employment with the federal government at the District Court of the Virgin Islands.

¶31    Neither party disputes that Rogers made these payments or that they were erroneous. Since Rogers has not yet retired, no refund on payments are statutorily due to her under 3 V.I.C. § 713(a). However, as the Court reasoned *In the matter of Gallivan*, Rogers is entitled to a reimbursement of her erroneous payments under a theory of restitution, along with any interest that actually accrued during the time GERS retained the funds. Therefore, the Court will order: (1) the Defendants to return the $16,139.00 paid by Rogers to GERS for her time at the District Court of the Virgin Islands; (2) the Defendants to provide an accounting of the amount of interest that accrued during the period Defendants retained and had the use of Robers' funds; and (3) that the Defendants pay to Rogers the amount of interest that actually accrued on the erroneously collected $16,139.00.

A judgment consistent with this Memorandum Opinion follows.

DATED: May 12 , 2022                                   **DENISE M. FRANCOIS**
                                                      Judge of the Superior Court of the Virgin Islands

**ATTEST:**

TAMARA CHARLES
Clerk of the Court

BY:

DONNA D. DONOVAN
Court Clerk Supervisor