

**FILED**
December 04, 2023 08:20 AM
ST-2018-CV-00375
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\***

| | |
|---|---|
| KENNY P. BRYAN, | ) CASE NO.: ST-2018-CV-00375 |
| | ) |
| | ) |
| Plaintiff, | ) **ACTION FOR DAMAGES** |
| vs. | ) |
| | ) |
| WENHAVEN, INC. d/b/a WENDY'S OLD | ) |
| FASHION HAMBURGERS, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

Cite as 2023 VI Super 77U

## MEMORANDUM OPINION

¶1    **THIS MATTER** is before the Court on:

1.    Defendant's Motion For Summary Judgment ("Motion"), filed January 27, 2022;

2.    Plaintiff's Opposition To Defendant's Motion For Summary Judgment, filed April 29, 2022;

3.    Defendant's Reply Re Motion For Summary Judgment, filed May 4, 2022; and

¶2    The Court finds summary judgment in Wendy's favor is appropriate as Bryan is a bona fide executive not covered by the Virgin Islands Wrongful Discharge Act.

### I.    INTRODUCTION

¶3    On July 30, 2018, Plaintiff Kenny P. Bryan ("Bryan") filed suit against Defendant Wenhaven Inc., which does business as Wendy's Old Fashion Hamburgers ("Wendy's"). Bryan states in his Complaint that he was hired by Wendy's as a policy and procedures manager, was moved into the general manager position for a period of two (2) years, and was wrongfully terminated without just cause on or about April 3, 2018.[1] Bryan asserts one (1) count in his Complaint: Count I – Violation of the Virgin Islands Wrongful Discharge Act.[2] After initially filing a Motion To Dismiss on June 6, 2019, which was denied by the Court on September 29, 2020, Wendy's denied the allegations of Count I in its Answer filed on October 12, 2020.

---

[1] Pl.'s Compl. 2.
[2] Pl.'s Compl. 3-4.

¶4      Wendy's moved for summary judgment on January 27, 2022, and attaches to its Motion three (3) depositions and the Wendy's Model Job Description for the District Manager position as evidence.[3] In support of its Motion, Wendy's cites Rule 56 of the Virgin Islands Rules of Civil Procedure and argues summary judgment is appropriate as it contends there are no issues of material fact.[4] Wendy's argues that Bryan was employed in a "bona fide position in an executive . . . capacity" within the meaning of V.I. CODE ANN. tit 24, § 62, is therefore excluded from the protections of the Wrongful Discharge Act, and he was therefore terminable at will.[5]

¶5      Wendy's states that the undisputed facts are, *inter alia*, Bryan was a district manager of Wenhaven, Inc., a franchise made up of two (2) Wendy's restaurants, one (1) located on St. Croix and one (1) located on St. Thomas, and his job was to "[m]anage[] the daily operations of the District to achieve sales, profits, customer satisfaction and human resource management objectives."[6] Bryan's subordinates included two (2) to four (4) salaried general managers, shift supervisors paid hourly, and crew members (e.g. cooks, cashiers) also paid hourly.[7] Each shift had ten (10) to twelve (12) crew members and there were two (2) to three (3) shifts.[8] General or regular managers set crew member schedules, and district managers set supervisor schedules.[9] Bryan regularly and customarily directed the work of some thirty (30) to thirty-five (35) employees.[10]

¶6      Wendy's further states that other undisputed facts include that Bryan had the highest level of managerial authority other than shareholders, he was the highest paid employee receiving over $100,000 a year, he exercised managerial authority in his first position as a procedures manager including in hiring and disciplining employees, and the ultimate discipline authority resided in the district manager, with only occasional input from the president/majority shareholder, Dr. Peter Kumpitch ("Kumpitch"), an optometrist on St. Thomas.[11] The only other active shareholder was Dan Poganski ("Poganski"), a New York resident and vice president of the business who oversaw the business finances; most other shareholders were passive investors and Bryan oversaw the day-to-day management of Wendy's.[12] Bryan was terminated on April 3, 2018, by a majority of the shareholders due to a perceived decline in his "work ethic" and the standards of quality mandated by Wendy's franchise agreement, as well as perceived noncompliance with government regulations.[13]

¶7      Wendy's had previously argued in its dismissal motion that Bryan was exempt from the Wrongful Discharge Act under federal law as he was a supervisor and on account of the bona fide executive exemption in the Virgin Islands labor law chapter. This Court disagreed with Wendy's Motion to Dismiss as it relied on outdated Third Circuit precedent which the Virgin Islands

---

[3] The depositions are of Kenny Bryan, Dan Poganski, and Peter Kumpitch.

[4] Def.'s Mot. 1.

[5] Def.'s Mot. 1.

[6] Def.'s Mot. 2.

[7] Def.'s Mot. 2.

[8] Def.'s Mot. 2

[9] Def.'s Mot. 3.

[10] Def.'s Mot. 9-10.

[11] Def.'s Mot. 3.

[12] Def.'s Mot. 4.

[13] Def.'s Mot. 4.

Supreme Court may or may not set aside now that the Supreme Court has been established,[14] and this Court found the record to be insufficiently developed to rule on the second point.[15] Now that discovery is completed, Wendy's argues the facts on the record show that Bryan is, in fact, a bona fide executive and therefore exempt from the Wrongful Discharge Act.[16]

¶8    Wendy's states that "executive" is a term of art not derived from the statute, but is derived from federal law.[17] Wendy's points out that the Virgin Islands Fair Labor Standards Act ("VIFLSA") uses the same verbatim language as the Federal Fair Labor Standards Act ("FFLSA"), and that, as the Court stated in *People v. Pratt*,[18] when a local statute copies a federal statute verbatim, federal law is useful in assisting courts with making judicial decisions.[19] The FFLSA provides that the Secretary of Labor defines who is a bona fide executive through regulations, and that the relevant regulation provides a short test which:

> specifies that an employee who is compensated on a salary basis at a specified higher rate, and whose primary duty consists of the management of the enterprise or a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of an "executive."[20]

¶9    Wendy's cites *Sorber v. Glacial Energy VI, LLC*,[21] where this Court found the relevant test in the federal regulations, located in 29 C.F.R. § 541.100, to be persuasive.[22] Wendy's quotes § 541.100 (as amended in 2019), which defines a bona fide executive as someone who is:

> (1) Compensated on a salary . . . of not less than . . . $455 per week if employed in . . . the U.S. Virgin Islands;
>
> (2) Whose primary duty is management of the enterprise . . . ;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[23]

¶10    Wendy's argues that the evidence shows that Bryan made four (4) times the threshold salary amount; his central duty was to manage the "enterprise" of the two (2) Wendy's facilities;

---

[14] 2020 VI Super 85U ¶¶ 16-28.

[15] *Id.* at ¶¶ 14-15.

[16] Def.'s Mot. 6.

[17] Def.'s Mot. 7.

[18] 50 V.I. 318 (V.I. 2008).

[19] *Id.* at 322. Def.'s Mot. 7.

[20] Def.'s Mot. 7-8 (citing first *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007), then 29 C.F.R. § 541.100).

[21] No. CIVIL ST-10-CV-588, 2013 WL 6184064 (V.I. Super. Ct. Nov. 22, 2013).

[22] *Id.* at *3. Def.'s Mot. 8.

[23] 29 C.F.R. §541.100(a) (2019). Def.'s Mot. 8-9.

he customarily and regularly directed two (2) or more employees, including several who had managerial authority of their own; and finally, even in his first position as a procedures manager, his opinion on who to hire or fire was given weight, and in his last position as district manager he had ultimate authority to hire and fire, with only occasional oversight by the majority shareholder.[24] Thus, Wendy's asserts, Bryan's "job as district manager was paradigmatic of a 'bona fide executive' position. There is no room for reasonable debate on the point."[25]

¶11    Wendy's then argues that Bryan was an employee who was terminable at will, citing to the *Banks* analysis in *Canton v. Virgin Islands Humanities Council*,[26] where this Court stated that "the common law principle that an employment relationship is at-will unless it is modified by a statute, such [sic] the WDA, or an express contract provision."[27] Wendy's states that Bryan had no contract provision specifying the term of his employment, he was not covered by the Wrongful Discharge Act, and there is "not the slightest suggestion that the termination transgressed any clearly defined and established Virgin Islands public policy" and therefore he was terminable at will at any time for any or even no reason and 'just cause' is not required.[28]

¶12    Bryan opposes Wendy's Motion and argues that the "federal wage and hour law definitions of a 'bonafide executive'" should be stripped from Wendy's legal argument and the "plain dictionary meaning of the word 'executive'" is all that need be considered.[29] Bryan argues he was not employed in an executive capacity and thus is protected by the Wrongful Discharge Act.[30] Bryan argues he never alleged he was a bona fide executive, and that while he "admits in his Complaint that at some point throughout his employment with Wendy's, he had worked as a policy and procedures manager and as a general manager, and that he had overseen operations at two Wendy's Old Fashioned Hamburger stores", he was an employee and is therefore covered by the Wrongful Discharge Act.[31] Bryan argues that 'bona fide executive' is a term used in the VIFLSA; that it is "inappropriate to automatically apply [National Labor Relations Act] definitions to the [Virgin Islands Wrongful Discharge Act]"; and while the VIFLSA may be parallel to the FLSA, there is no parallel to the Wrongful Discharge Act.[32]

¶13    Bryan cites to a 2014 District Court of the Virgin Islands case, *Gumbs-Heyliger v. CMW Associates Corporation*,[33] and states that the case provides a presumption that an employee was wrongfully discharged if discharged for any reason not stated in 24 V.I.C. § 76(a).[34] Bryan extends this presumption to all sections of the Virgin Islands labor code and states that therefore he is presumed to be an employee not an executive, and that he should not be required to prove that he was not working in an executive capacity.[35] Bryan states that there is not a clear definition of

---

[24] Def.'s Mot. 10.

[25] Def.'s Mot. 10.

[26] No. ST-2012-CV-00279, 2017 V.I. LEXIS 116 (V.I. Super. Ct. July 26, 2017) (unpublished).

[27] *Id.* at *16.

[28] Def.'s Mot. 11.

[29] Pl.'s Opp'n 1-2.

[30] Pl.'s Opp'n 2.

[31] Pl.'s Opp'n 3.

[32] Pl's Opp'n

[33] 73 F. Supp. 3d 617 (D.V.I. 2014).

[34] *Id.* at 622. Pl.'s Opp'n 5.

[35] Pl.'s Opp'n 5.

"executive capacity" and argues that Wendy's needs to prove that Bryan was working "in a genuine position as a corporate officer at the upper levels of management."[36]

¶14    Bryan argues, based on an email directing the restaurant be acid washed and steamed, that in fact he was "directed and controlled by the true executives"; that Kumpitch was actually deeply involved in the day-to-day management; and that the shareholders such as Poganski and Kumpitch had direct control over Bryan.[37] Bryan contends that if he were truly an executive, he would not be "micromanaged" by being directed how to clean the store, nor would it be conceivable that he could be "written-up."[38] Next, Bryan contends that he is not terminable at will and it is a fact issue for the jury to determine if he was dismissed for being negligent in his work or incompetent or inefficient.[39] Finally, Bryan requests oral argument on the motions pursuant to Virgin Islands Rule of Civil Procedure 6-1(g).[40]

¶15    Wendy's replies that 24 V.I.C. § 62 applies to all of chapter 3 of the Virgin Islands labor code, including the Wrongful Discharge Act, that this exemption has existed for decades in Virgin Islands law, and even longer in Federal law.[41] Wendy's, citing to *Gov't of the Virgin Islands v. Servicemaster Co.*,[42] argues that the Court must presume that the Virgin Islands Legislature knew the law when it legislated the bona fide executive exemption.[43] Further, Wendy's argues that even by the dictionary definition of 'executive,' "Bryan, as the District Manager of two fast food restaurant franchises earning a six-figure salary and overseeing general managers, shift supervisors, and numerous staff employees, was clearly an 'executive' according to the common meaning of that term."[44]

¶16    Wendy's then argues that 'bona fide executive' has acquired a "peculiar and appropriate meaning in the law" and is a legal term of art.[45] Wendy's asserts that the "Virgin Islands legislature must be presumed to have been familiar with the federal definition of 'bona fide executive' when it amended Section 62" and further cites to *Sorber v. Glacial Energy VI, LLC*,[46] where this Court adopted the same test from the Code of Federal Regulations for 'bona fide executive' cited above.[47] Wendy's argues that the Court here should similarly find that test persuasive and use it to guide the current decision.[48] In addition, Wendy's points out that Bryan "fails to posit any plausible alternative definition of 'bona fide executive' for the Court's consideration, and fails to articulate

---

[36] Pl.'s Opp'n 5-6.

[37] Pl.'s Opp'n 6.

[38] Pl.'s Opp'n 6.

[39] Pl.'s Opp'n 7.

[40] Pl.'s Opp'n 8. V.I. R. Civ. P. 6-1(g) states: "A request for oral argument shall be separately stated by the movant or respondent. The court may set the motion for hearing or decide it based upon the submission(s)."

[41] Def.'s Reply 1.

[42] 2019 VI Super 164.

[43] *Id.* at ¶ 13. Def.'s Reply 2.

[44] Def.'s Reply 2 (citing *Executive*, WEBSTER'S THIRD NEW INT'L DICTIONARY 794 (1993)).

[45] Def.'s Reply 2.

[46] No. ST-2010-CV-00588, 2013 V.I. LEXIS 69 (V.I. Super. Ct. Nov. 22, 2013).

[47] *Id.* at *8-9 ("[N]either the Virgin Islands Code nor V.I. caselaw provides a definition of [bona fide executive]. However, the Code of Federal Regulations persuasively defines an employee employed in a bona fide executive capacity as . . . ."). Def.'s Reply 3.

[48] Def.'s Reply 4.

any coherent policy argument why the federal definition is unsuited to the [Wrongful Discharge Act]."[49]

¶17    Wendy's responds to Bryan's "curious suggestion that he was no more than a subservient corporate functionary—that all significant managerial authority was exercised by the franchise owners on a day-to-day basis."[50] Wendy's points to evidence in the form of Bryan's own deposition that this was not the case, namely that: Bryan stated he was "the person with all the responsibility for the operation and management of the two Wendy's stores"; that only anything "major" would go through Kumpitch; and when asked whether Kumpitch was a "hands-on" owner, Bryan stated Kumpitch rarely appeared on-site, appearing only four (4) or five (5) times in the entire four (4) years Bryan worked there.[51] Additionally, Wendy's presents deposition testimony that the other owners appeared even less frequently with Bryan responding that it is correct that "it wasn't like any of them came twice a week and looked over your shoulder and directed you in your basic tasks as district manager, correct?"[52] Wendy's also points to deposition evidence where Bryan stated he was the "commander-in-chief" of day-to-day operations and that, other than shareholders, he had the highest level of managerial authority.[53]

¶18    Wendy's argues that simply because Bryan "was generally accountable to board members, or even that they gave him specific instructions on occasion" does not detract from his status as a bona fide executive.[54] Further, Wendy's notes that, unless an executive is also the sole shareholder, all executives are ultimately accountable to a board of directors.[55] Wendy's also refutes Bryan's unsubstantiated argument that only those at the very top of the corporate hierarchy qualify as a 'bona fide executive,' citing cases from the Third Circuit and elsewhere to show that even assistant managers have been found to qualify for the exemption.[56] Wendy's concludes by reiterating that the Court should enter summary judgment in its favor.[57]

## II.    LEGAL STANDARD

### A. Summary Judgment

¶19    Summary judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states:

> A party may move for summary judgment, identifying each claim or defense—
> or the part of each claim or defense—on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no

---

[49] Def.'s Reply 4.

[50] Def.'s Reply 5.

[51] Def.'s Reply 5-6.

[52] Def.'s Reply 6.

[53] Def.'s Reply 6.

[54] Def.'s Reply 6.

[55] Def.'s Reply 6. Wendy's cites to 13 V.I.C. § 61 which states: "The business of every corporation organized under this chapter shall be managed by a board of directors, except as hereinafter or in its articles of incorporation otherwise provided."

[56] Def.'s Reply 6-7.

[57] Def.'s Reply 7.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[58]

¶20    Or, as the Virgin Islands Supreme Court stated in *Antilles School, Inc. v. Lembach*,[59] summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party."[60]

¶21    Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to material fact[.]"[61] The nonmoving party must show in its response to a motion for summary judgment that there are "specific facts showing a genuine issue for trial."[62] In addition, "[t]he non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough[.]"[63] For a nonmoving party to show some genuine issue of material fact for trial, "'the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla,' in support of its position."[64] Further, "[i]f the non-movant offers evidence that is 'merely colorable' or not 'significantly probative,' summary judgment may be granted."[65] Finally, the "Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party."[66]

## B. Wrongful Discharge Act

¶22    The Virgin Islands Code protects employees from being wrongfully discharged from employment and provides for nine (9) different grounds for discharging an employee in title 24, § 76(a).[67] Section 76(c) states that any employee not discharged for one (1) of those nine (9) reasons:

---

[58] V.I. CIV. P. 56(a).

[59] 64 V.I. 400 (V.I. 2016).

[60] *Id.* at 409.

[61] *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[62] *Williams*, 50 V.I. at 194 (V.I. 2008) (quoting FED. R. CIV. P. 56(e)).

[63] *Anthony*, 58 V.I. at 229 (quoting *Williams*, 50 V.I. at 194-95).

[64] *Anderson v. American Fed'n of Teachers*, 67 V.I. 777, 789 (V.I. 2017) (quoting *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527-28 (V.I. 2012)).

[65] *Pemberton Sales & Serv. v. Banco Popular de P.R.*, 877 F. Supp. 961, 965 (D.V.I. 1994).

[66] *Williams*, 50 V.I. at 195 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[67] 24 V.I.C. § 76(a). This section states:

(a) Unless modified by union contract, an employer may dismiss any employee:
(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

shall be considered to have been wrongfully discharged; however, nothing in this section shall be construed as prohibiting an employer from terminating an employee as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship, or as a result of the employee's participation in concerted activity that is not protected by this title.

¶23     Title 24, § 62 of the Virgin Islands Code provides for the definition of who counts as an "employee" and states:

"employee" includes any employee or any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but does not include any individual employed . . . in a bonafide position in an executive or professional capacity[.]"[68]

¶24     Federal regulations define who constitutes a bona fide executive for federal labor law purposes in 29 C.F.R. § 541.100(a), which provides that:

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands by employers other than the Federal government, or $380 per week if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

---

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who willfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

[68] 24 V.I.C. § 62.

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[69]

¶25    This is not the first time this Court has had to consider whether an employee qualified as a bona fide executive for purposes of the Wrongful Discharge Act. In *Sorber*, this Court considered whether an employee hired as a 'Manager of Application Support' qualified as a bona fide executive under the Wrongful Discharge Act.[70] The Court adopted the federal regulation test outlined above and found that the employee was a bona fide executive as a matter of law because: (1) the employee had a salary of $150,000 per year, in excess of the $455 per week; (2) the employee managed a team of four (4) people, whose work she assigned and critiqued and whose work priorities she set, satisfying the second and third elements; and (3) her input was given particular consideration when it came to hiring, firing, and promoting other employees.[71]

## III.    ANALYSIS

¶26    While not controlling, federal law may be used to elucidate areas of Virgin Islands law which may be novel or not fully developed and the Virgin Islands law is modeled after or parallel to the federal law.[72] As in the case of *Sorber*, this Court finds the test and definition in the federal regulations to be useful in analyzing when someone may be considered a bona fide executive.[73] While in a future case another criterion not enumerated in the federal test or definition may certainly be considered by the Court, the Court notes Bryan has not suggested any other test or what other factors the Court should consider here, but that the Court merely go by the dictionary definition of 'executive.'[74] Therefore, the Court will proceed with an analysis following this Court's prior decision in *Sorber* and the test outlined in 29 C.F.R. § 541.100(a).

¶27    Bryan argues that *Gumbs-Heyliger v. CMW Associates Corporation* requires that there is a presumption that Bryan is an employee and not an executive.[75] This is beyond a strained reading of the case—that case simply provides that "the [Wrongful Discharge Act] itself supports the conclusion that the burden of persuasion properly lies with the employer to prove that the employee was discharged for one of the nine permissible reasons under the Act."[76] It does not alter in any way the definition of who is or is not an employee for purposes of the Wrongful Discharge Act. One either is or is not an employee for the purposes of the Wrongful Discharge Act. Assuming *arguendo* that Bryan is entitled to a presumption he was an employee, the undisputed facts indicate

---

[69] 29 C.F.R. § 541.100(a).

[70] *Sorber*, 2013 V.I. LEXIS 69 at *1-2.

[71] *Id.* at *8-10.

[72] *See People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008) ("Because section 33(d)(3) is modeled after its federal equivalent, 18 U.S.C. § 3731, which contains virtually identical language, judicial decisions interpreting the federal statute shall assist this Court in interpreting the same clause found in our local statute.") (citing *Brown v. People of the V.I.*, 49 V.I. 378, 381 (V.I. 2008)).

[73] *Sorber*, 2013 V.I. LEXIS 69 at *8.

[74] Pl.'s Opp'n 1-2.

[75] Pl's Opp'n 5.

[76] *Gumbs-Heyliger*, 73 F. Supp. 3d 617 at 623.

he was not an employee but a bona fide executive and that Wendy's has well met its burden of proof as the analysis below demonstrates.

¶28    Bryan also argues that there exists a material dispute as to whether Bryan exercised managerial authority premised on emails directing Bryan to maintain a clean restaurant and another informing Bryan to secure flights and lodging for two (2) people who were coming to acid wash, ammonia clean, and steam clean the St. Thomas restaurant.[77] These two (2) emails, one (1) admonishing Bryan to keep a clean restaurant following a Department of Health visit and one (1) informing Bryan of cleaners coming to one (1) of the restaurants he manages hardly qualifies as "micromanaging." In fact, these emails appear to be in line with the standard oversight a board or majority shareholder exercises over an executive that manages the day-to-day affairs of a business and has not performed to the board's satisfaction—that is, one (1) email identifies an area where the executive needs to improve in the management and directs him to improve, and the other email informs him of temporary outside assistance that will be coming in to provide help. Given the nature of the enterprise, it is unlikely that a cashier or fry cook would be in charge of booking flights and rooms for cleaners brought in to perform a "deep-clean," or that Bryan himself would conduct the ammonia and steam cleaning. One (1) email in four (4) years by the majority shareholder mandating such a deep-clean does not deprive Bryan of his everyday authority and responsibility for the restaurants' cleanliness. These emails are not significantly probative to constitute a material dispute of fact as to Bryan's management authority.

¶29    Similarly, Bryan provides no support for his position that it is inconceivable that an executive could be "written-up" or in anyway reprimanded, and the Court is not of the opinion that a board or shareholder(s) holding an executive accountable in anyway deprives them of their status as an executive. That one could be admonished or reprimanded has little bearing on whether one manages a business or some aspect of a business, and the Court sees no reason to impose such a factor in determining whether someone is a bona fide executive and many reasons not to (e.g., businesses may find it a useful tool to ensure accountability for executives short of firing them). Finally, while Bryan has requested oral argument, the Court will decline the request as this matter is determinable on the filings.

¶30    Looking now to whether Bryan qualifies as a bona fide executive, under the first criterion, the undisputed evidence is that Bryan's salary exceeded $100,000 per year (roughly $1,923 per week), far above the $455 per week stated in the test. Other undisputed evidence shows that Bryan exercised increasing managerial authority, eventually reaching the pinnacle of the corporate hierarchy apart from the shareholders, and he ultimately oversaw two (2) to four (4) general managers and ten (10) to twelve (12) crew members, and ultimately some thirty (30) to thirty-five (35) employees total, satisfying criteria 541.100(a)(2) and 541.100(a)(3) of the test. Lastly, the facts indicate that Bryan had the authority to hire, fire, promote, as district manager, and even in his prior position as a procedures manager, his opinion on who to hire, fire, or promote was given consideration. Even if the majority shareholder Kumpitch gave input or had ultimate approval, it is clear at the very least Bryan had considerable weight in these areas. Bryan then clearly qualifies as a bona fide executive.

---

[77] Pl's Opp'n 6; Pl's Ex. 6; Pl.'s Ex. 15.

¶31  As stated in 24 V.I.C. § 62, a bona fide executive is not considered an employee for purposes of chapter 3 of title 24, and the Wrongful Discharge Act is contained within chapter 3 of title 24. Therefore, as a bona fide executive Bryan is not covered by the Wrongful Discharge Act. Bryan had no express contract provision concerning his dismissal, and it is not argued, nor does the Court see, how his dismissal would be contrary to public policy, thus he was terminable at will. There exist no disputed facts material to this analysis, Wendy's has presented sufficient evidence to support its position, and even taking all inferences in a light most favorable to Bryan, there is not a genuine issue such that a reasonable jury could find in favor of Bryan. Therefore, summary judgment in favor of Wendy's and dismissing the sole count of 'Violation of the Wrongful Discharge Act' is appropriate.

## IV.  CONCLUSION

¶32  On or about April 3, 2018, Bryan was discharged from his position as district manager of a Wendy's franchise which operates two (2) restaurants in the United States Virgin Islands, one (1) on St. Thomas and one (1) on St. Croix. On July 30, 2018, Bryan sued Wendy's claiming a violation of the Virgin Islands Wrongful Discharge Act. However, as Bryan meets the definition of a bona fide executive, he is not considered an employee for purposes of the Wrongful Discharge Act and is therefore exempt from its protections. Consequently, Bryan's Complaint alleging a single count of violation of the Virgin Islands Wrongful Discharge Act by Wendy's will be dismissed.

A judgment consistent with this Memorandum Opinion follows.

DATED: December 4, 2023

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor ___ / ___ / ___


**FILED**
December 04, 2023 08:22 AM
ST-2018-CV-00375
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*

| | |
|---|---|
| **KENNY P. BRYAN,** | ) CASE NO. ST-2018-CV-00375 |
| | ) |
| Plaintiff, | ) **ACTION FOR DAMAGES** |
| vs. | ) |
| | ) |
| **WENHAVEN, INC. d/b/a WENDY'S OLD** | ) |
| **FASHION HAMBURGERS,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

Cite as 2023 VI Super 77U

## JUDGMENT

**AND NOW,** in accordance with this Court's Memorandum Opinion of even date, it is hereby

**ORDERED** that Defendant's Motion For Summary Judgment, filed January 27, 2022, is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint and the above-captioned action is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Joint Motion for Ruling on Defendant's Motion for Summary Judgment, filed on May 3, 2023, is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's Request for Status Conference, filed August 3, 2023, is **DENIED as moot**;

**ORDERED** that a copy of this Judgment and the Memorandum Opinion shall be directed to counsel of record.

DATED: December **4** , 2023

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor __12__ / __5__ / __23__

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

December 05, 2023 08:24 AM
ST-2018-CV-00375
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### District of St. Thomas/St. John

| | |
|---|---|
| Kenny P. Bryan, | Case Number: **ST-2018-CV-00375** |
| **Plaintiff** | Action: **Damages** |
| v. | |
| Wenhaven, Inc. D/B/A Wendy's Old Fashion Hamburgers, | |
| **Defendant.** | |

### NOTICE OF ENTRY
### OF
### <u>MEMORANDUM OPINION AND JUDGMENT</u>

**To:** <u>John Phillip Fischer</u>          <u>Edward L. Barry, Esq.,</u>
                                           <u>Scot F. McChain, Esq.</u>

Please take notice that on December 05, 2023
a(n) _____ Memorandum Opinion and Judgment _____
dated   <u>December 04, 2023</u>   was/were entered
by the Clerk in the above-titled matter.

Dated:  <u>December 05, 2023</u>

                                    <u>Tamara Charles</u>
                                    **Clerk of the Court**

                          By: _____
                                    Danica A. Miller
                                    **Court Clerk II**